(53 South. 357.)

No. 17,817.

CLAUSSEN v. CUMBERLAND TELEPHONE & TELEGRAPH CO.

(June 20, 1910. Rehearing Denied Oct. 17, 1910.)

*(Syllabus by the Court.)*

1. TELEGRAPHS AND TELEPHONES (§ 15*) — MAINTENANCE OF LINE—NEGLIGENCE.

One who strings wires along a public highway is under the obligation of seeing that the poles used to support them are of sufficient strength, and is also under the obligation to see that they continue so, and, where he fails in the performance of either duty, he will be responsible for the damages arising out of his neglect. Williams v. Louisiana Electric Light & Power Co., 43 La. Ann. 295, 8 South. 938.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 9; Dec. Dig. § 15.*]

2. TELEGRAPHS AND TELEPHONES (§ 15*) — NEGLIGENCE—FALLING WIRES.

Where telephone or telegraph wires are thrown down and across a public highway by a storm, the owner of such wires must use all haste possible to remove them, and, failing to do so, will be liable for any damage caused by his failure to use the required diligence.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 9; Dec. Dig. § 15.*]

3. TELEGRAPHS AND TELEPHONES (§ 15*)—DEFECTIVE POLES—NEGLIGENCE.

Where telegraph or telephone poles of insufficient strength or which have become decayed are blown down in a storm, and are the cause of injury, it will not avail the defendant to show that good poles were blown down by the same storm for different conditions of soil, and protection might have caused the fall of the latter. In the absence of other proof, the weakness or decay of the poles will be held to be the proximate cause of the damage.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 9; Dec. Dig. § 15.*]

4. TELEGRAPHS AND TELEPHONES (§ 20*) — FALLEN WIRES—INJURY TO TRAVELER—CONTRIBUTORY NEGLIGENCE.

There is no reason for holding that a reasonably prudent man would have acted differently from the plaintiff under the circumstances, and so he cannot be charged with negligence.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 13; Dec. Dig. § 20.*]

Appeal from Twenty-Third Judicial District Court, Parish of St. Mary; Charles A. O'Niell, Judge.

Action by Otto C. Claussen against the Cumberland Telephone & Telegraph Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Denegre & Blair, Donelson Caffery, and Jas. R. Parkerson, for appellant. Foster, Milling, Brian & Saal, for appellee.

BREAUX, C. J. Plaintiff, for the loss of one of his eyes, brought this suit to recover damages in the sum of $15,000.

Judgment was rendered in his favor for one-half the amount.

Late in the night on the 1st of August, 1908, he left the village of Centerville, in the parish of St. Mary, to return to his home on Bayou Sale. On his way he drove over wires of the defendant, which had fallen across the road, and met with the injury of which he complains.

His complaint is that the defendant used small telephone poles which were decayed; that they and the wires strung across on them fell across the road and remained where they had fallen for an unreasonable time.

Plaintiff alleges that his buggy and horse became entangled in the wires; that he alighted and sought to extricate them, but failed, and was hurt, as stated above; that the coil of wire he was pulling sprang back and struck him in the left eye, destroying it entirely.

The defendant pleaded general denial, and averred that plaintiff by his own negligence had brought on the injury; that the poles and wires had not fallen; that they had been blown down by the violence of the storm on the night of the 28th of July, 1908.

Defendant further alleged that it repaired the line within the least possible delay after the poles had been blown down.

Plaintiff is a young man, 24 years of age.

The road over which he was driving is a well-known public road meandering along the Bayou Sale toward the Gulf.

The wires at the place known as "Claussen's Crossing," where plaintiff was hurt, are higher than along the line; that is, they are above the height of the passing cars, being strung across a railroad track.

It was in the spring of 1907 that the line at this place was strung on higher poles. One of the defective poles on which the wire was strung was of cypress and the other of gum, each about 32 feet in length.

Defendant had 59½ miles of lines operated from Franklin, where is its exchange.

The wind was violent on the night in question. Along these lines 124 poles were blown down.

Men were employed and the lines were repaired.

Slowly, is the complaint of plaintiff.

The question arose during the trial as to whether the officers of the company had exercised good judgment in undertaking to make the repairs and in limiting the number of their hands, as it is alleged they did.

We have not found any gross negligence in this particular.

None the less, if the company had sent special gangs of two or more men, each along the line to clear the public road, the obstruction would not have been in the way of plaintiff, and he would not have lost his eye.

It would have been the part of better management, no doubt.

Whether the defendant should be held liable because its officers chose to do slower work at less cost presents a question for our decision.

Slower work in putting up the line that had been blown down, to which we have referred, consisted in sending squads of men along the road and putting up the poles and stringing up the wires. The work was done permanently as the hands went with it.

We must say that, after the heavy blow and the condition brought on by it, defendant should have been active in restringing the line. It was known that the wires were down in the road, and that they obstructed the road. Notice was telephoned to the exchange at Franklin.

As relates to the fallen poles and the wires at the particular place ("Claussen's Crossing"), to which place we will limit from this on in our inquiry:

Mr. J. W. Foote testified, substantially that he on the Sunday—that is, two days after the storm—met with great difficulty in passing this crossing. The wires were all over the road at this crossing. (Let it be remembered always that the crossing is where plaintiff was hurt.) He says that he drove over wires and passed under others hanging to the standing poles and stretched out toward the ground.

This witness is corroborated by Horace M. Berwick and Byron W. Eells.

The latter said that the day after the storm

he had passed the poles and wires. He telephoned to the exchange at Franklin, notifying them of the condition of the road, and calling their attention to the fallen wires.

Mr. H. O. Berwick, another witness, a planter of some experience, testified that the Supulo gum pole exposed to the weather will not last longer than 12 months, and for that reason should be used only temporarily, and that cypress sapling is less durable than the heart of that wood. There can be no question the cypress pole was decayed and the gum pole was small.

The case was tried by jury.

### Opinion, Citation of Decisions, and Judgment.

A natural cause, such as a violent storm, can of itself give rise to no liability for damages thereby occasioned. An accident gives no rise to a liability if the property is in fairly good shape and condition. If the company had wired its line with good material, inspection had been careful, management good, loss caused by vis major would present no ground for recovering damages.

If there were no antecedent acts of commission or omission by defendant company, the violent wind on the night the wires were thrown down would be a complete defense.

But the fact is that there were weak, worthless poles used; dilatoriness in making the repairs after the defendant had been notified of the necessity of immediate repairs.

After plaintiff had alighted from his buggy, he pulled the wire from his horse's feet and legs and pulled it from the axle and hub of his buggy, around which it was wrapped. The wire was in length about 150 feet. In pulling he used both hands. The coil at the end of the wire yielded to the pull, sprang back, struck him in the eye. The blow caused its loss.

It does seem to us that the manner of pulling this wire was about the same that any reasonable person would resort to, to get out of the pass in which plaintiff was. He could not be expected in the dark on his way to his home to be cool and calculating in all the motions of his hands; to pull with one hand and protect himself from impending danger with the other, as contended by defendant should have been done.

True, he had passed the wires during the day—Saturday—following the fall of the wires across the road.

He had seen the débris. But on his return —at night—it was not possible for him to protect himself against entangling wires as perhaps, had it been during the day, he could have done. During the day he could select the path to follow in the public road. He could not very well at night select a path.

Now as to the poles:

Wherever poles are used to string wires, if near a highway, it is necessary to be careful that they be of strength sufficient to sustain the weight. They should be sound.

The two that fell at the crossing in question were not sound.

The fact that an appliance is not safe, that it is not calculated to serve the purpose for which it is used, at once attracts attention when any one in consequence suffers an injury.

In Williams v. Louisiana Electric Light & Power Co., 43 La. Ann. 295, 8 South. 938, this court had occasion to pass upon a wound occasioned by the fall of a decayed pole.

It was in a city where owners of lines must be careful.

In some respects the necessity for reasonable supervision is the same.

The court condemned the defendant to pay damages.

Even on a country road, there must be care exercised.

Here the road upon which plaintiff was driving is a well-known public road, meandering along the Bayou toward the Gulf, as

above stated. There is a population of about 2,000 in the neighborhood of the crossing, many of whom have occasion to use this road.

It was of sufficient importance, when defendant's employés were informed by Eells of the fallen wires, to urge them at once to immediate activity in order to clear the way.

One of the owners of a nearby plantation voluntarily removed the obstruction on a Sunday, and on Monday defendant's employés began the work of repair at this crossing.

One of the grounds of defendant at this point is that, because of the fall at other points in defendant's long line of some 59 miles, the employés were delayed, and could not take up the work at this particular place before they did.

We are not quite sure that ordinarily it was not possible to do anything to remove the débris before the Monday following the casualty.

To say the least, defendant did not make that point clear. The testimony does not create the impression of active prosecution of the work of removing fallen wires. Besides, they should have given the matter of the fallen wires more immediate attention than was given. Such obstruction should not be permitted to lie in a public road for several days.

As a ground of defense, the theory is pressed upon our attention that the wind on the night of the storm was so violent that, even if the two poles in question had been very sound and of a much larger size, they would have been thrown down; other poles fell at other places along the line that were large and sound.

These other poles were not in the immediate vicinity. Where these other poles fell, the wind might have been more violent; the country open, presenting less obstruction; the soil not as consistent—sandy.

It was not shown that the condition was near the same in the other places where the poles fell.

Under the theory in the case for the trial in the district court the issues were confined to the two defective poles in question.

It was sufficient, in view of the facts and circumstances, that the poles were decayed, and not such poles as should have been used. It is also sufficient to show liability that there was unreasonable delay in making necessary repairs after the wires had fallen.

This brings us to the question of the proximate cause of the loss which plaintiff suffered.

Whether it is to be laid at the door of plaintiff or defendant?

The condition at the crossing was created by the defendant. The first cause was traced to it. It continued to the moment the wound was inflicted. The plaintiff did that which suggests itself to the average person in a similar plight. In that which he did we have not found negligence. There was no want of ordinary care on the part of plaintiff. He did not contribute to his own injury. The responsibility which began with the company was not interrupted by the asserted negligence of the plaintiff.

We cannot avoid the thought that a little more care on the part of the defendant in selecting the poles and in the supervision of the line would have gone far in the direction of preventing the danger.

A few more darkies—common labor—employés in replanting the poles after the storm, in restringing the wires would have put an end to the uninviting condition in a public road.

Now as to the amount of damages:

Plaintiff is a young man. He has lost the eye entirely. He suffered excruciating pain.

Nothing can replace a lost eye. A jury of the vicinage fixed the amount of the damages.

We have concluded to leave it unchanged—that is, at $7,500.

The law and the evidence being in favor of plaintiff, it is ordered, adjudged, and decreed that the judgment appealed from is affirmed.