HYMAN v. SALZER PLUMBING CO., INC.

---

(July 1, 1931. Opinion and Decree.)
(October 10, 1931. Rehearing Granted.)

---

Herbert S. Weil, of New Orleans, attorney for plaintiff, appellee.

Hugh M. Wilkinson, of New Orleans, attorney for defendant, appellant.

MORENO, Judge ad hoc. This is a suit by Harry Hyman, Jr., against the Salzer Plumbing Company, Inc., for $7,959.25 for injuries, loss of time from work, and medical expenses resulting from a collision between a truck of the defendant company and an automobile in which plaintiff was a passenger. There was a judgment in favor of the plaintiff in the sum of $2,459.25 with interest, from which defendant has appealed.

The record shows that on August 21, 1929, the car in which plaintiff was riding, driven by Leonard L. Dahlman, was proceeding down Willow street. The truck

of the Salzer Plumbing Company, Inc., driven by Alfred R. Salzer, the head of the defendant company, was being driven along Robert street in the direction of the river. The Dahlman automobile was struck on the left rear side by the Salzer truck at a point below the mid-line on Robert street on the river side of Willow street. The Dahlman car was overturned and the Salzer truck came to a stop after striking a post situated at the lower river corner of the intersection.

The case involves the usual conflict of testimony as to who preempted the intersection and as to the relative speeds of the colliding vehicles. The plaintiff and his witnesses contend that the Dahlman car was proceeding down Willow street at a rate of speed somewhere in the neighborhood of 20 miles an hour, and possibly ranging from 22 to 25 miles an hour. Under the city ordinance vehicles on Willow street have the right of way, and it is contended by plaintiff that the defendant's truck approached the right of way street at a high rate of speed and attempted to cross at a time when it was or should have been apparent to the driver that a collision would result, if he attempted to do so.

The defendant, on the other hand, contends that the driver of its truck was free from negligence and that the accident was due solely to the fault of the driver of the car in which plaintiff was riding; that the car was being operated at a speed in excess of 30 miles an hour and in a negligent manner; and that the plaintiff was guilty of contributory negligence in riding in the car at that speed without protesting against its negligent operation. The specific facts of negligence, except the speed of the car, are not set out by the defendant in support of its plea of contributory negligence.

Mr. F. B. Stern, vice-president of the Interstate Electric Company, was driving his car down Willow street immediately behind that of the Dahlman car and says that the latter was going not over 20 miles an hour. He says that the Salzer truck came out of Robert street into the intersection of Willow street at a high rate of speed and struck the Dahlman car with such force as to turn it completely over and that the Salzer truck came to a stop only after it had struck the post at the corner. He says the Dahlman car had entered the intersection first and that the collision took place near the downtown corner.

Mr. Hyman testified that the car in which he was riding was going possibly 20 or 25 miles an hour, and that, at the time of the accident, he was talking to someone else in the car and did not see the other car approaching and knew nothing of the accident until he awoke in the hospital sometime later that day.

Mr. Dahlman, the driver of the car, says that he knew that he had the right of way on Willow street and that, when he saw the Salzer truck, it was in Robert street and he thought it would stop at Willow street to accord him the right of way, but instead the truck came on and collided with the left rear fender on his car and turned it completely over on its right side. He also says that he was going at a rate of speed between 22 and 25 miles an hour and had practically passed the intersection so that his rear left side was exposed to the blow of the Salzer truck. He says Mr. Salzer did not blow

his horn, nor did he give any other indication of his attempt to pass at that time.

The testimony of these witnesses is largely corroborated by Richard Greenblatt, who was also a passenger in the Dahlman car. Their testimony clearly makes out the case for the plaintiff.

In addition to their testimony, a lady who was standing on the corner of Robert and Willow also testified that the accident was due wholly to the Salzer truck. However, her evidence is not convincing and its acceptance not necessary to a decision of the case.

In contradiction of the testimony of these witnesses is that of Mr. Salzer, the driver of the defendant's truck. His testimony on the main facts, as well as on immaterial points, is wholly lacking in conviction. He says that there is a rubber warning sign to slow up at Robert street near the intersection of Willow street. He says he slowed up and when he was near the intersection he looked up Willow street and saw the Dahlman car approximately 100 or 125 feet away and then looked down Willow street to see if any car was approaching from downtown. He testified that as he righted his head, he was confronted with the Dahlman car, and that it was practically on top of his and not more than four or five feet away.

It is clear from this testimony that, having looked and seen Dahlman's car some distance up Willow street, he completely dismissed it from his mind and attempted to drive across at a time when it was approaching and without doing anything to take into account its movements. He, of course, says that if it was moving at an ordinary rate of speed, he would have had time to cross Willow street in safety.

However, if he looked, as he says he did, he must have seen the speed of the car, or at least he was held to the obligation of ascertaining its speed before reaching a conclusion as to what he should do. If it was approaching at an excessive rate of speed, as he would have the court believe, then he should have seen this rate of speed and should not have attempted to cross, in view of its excess. No matter how great the speed of the Dahlman car, if he had exercised ordinary caution in looking up Willow street before attempting to cross, he would have been apprised of its speed and would have been held to the obligation of taking it into consideration in directing his own movements.

If he failed to do so, then the proximate cause of the accident was not the speed of the Dahlman car, but his attempt to cross in spite of the unlawful rate of speed at which it was approaching. Since his car approached the corner at a slow rate of speed, it must have been under control, and there was, therefore afforded him the opportunity of stopping his car in time to permit the Dahlman car to cross, and if he is correct in his estimate of his speed, then there can be no doubt of his obligation to do so.

His testimony, however, does not impress us because of the improbability of the collateral facts to which he testifies. He seeks to make the court believe that the Dahlman car traveled a distance of ninety feet after it had been struck by his truck before turning over. The testimony of all the other witnesses is that the Dahlman car turned over immediately after having been struck, or within a few feet of

the point of contact. The description of the actions of the Dahlman car as testified to by the witnesses for the plaintiff is in accord with probability, while the testimony of Mr. Salzer is wholly improbable and unacceptable.

His description of his interest in the Dahlman car after the collision hardly comports with the ordinary conduct of the average person. He says the Dahlman car passed him very fast and that the Salzer truck rubbed the Dahlman car rather than hit it, and that the latter car cleared the Salzer truck and "went up the street and started running on the sidewalk, for at least 25 or 30 feet on the sidewalk. I was so interested at him running on the sidewalk before I come to a stop I hit a post."

It is hardly probable that in these circumstances, the unusual spectacle of an automobile running on a sidewalk would have so attracted and centered the attention of Mr. Salzer that he would have been so completely oblivious to the needs of his own safety that he would have run into a post. If his testimony that the Dahlman car had gone 90 feet after the collision before turning over were not contradicted by all of the other witnesses in the case, his description of its actions and of his conduct in regard thereto would hardly commend itself to the credibility of the court. Upon the conclusion of all of the testimony there remains the clear conviction that the accident was due solely to the fault of the driver of the defendant's truck.

It was urged that the speed of the Dahlman car was in violation of the traffic ordinance and that the plaintiff was guilty of contributory negligence in riding at that speed without protesting to the driver. We are convinced that the speed of the Dahlman car was not the cause of the accident, but we are equally convinced that if it had been, the negligence arising out of the excessive speed could hardly be attributed to the plaintiff. If this car had been driven at 35 or 40 miles an hour, it is inconceivable that the plaintiff would not have known of the excessive rate of speed. However, if the car was being driven at a speed of between 20 and 22 miles an hour, or possibly as much as 25 miles an hour, it can hardly be said that a passenger engaged in conversation with another passenger should have been aware of the excessive speed so as to warrant holding him guilty of contributory negligence. Before there can be contributory negligence on the part of a passenger, as distinct from the imputation to the passenger of the negligence of the driver, the facts must be such as to induce the belief that the passenger was aware of the negligent operation of the car and continued to ride therein in spite of knowing of its negligent operation, or of being held to a knowledge of its improper operation. It is readily conceivable that while no reasonable man could be unaware of the operation of an automobile at 30 or 40 miles an hour, 10 or 20 miles in excess of the legal rate of speed, it is conceivable that he might be unaware of the fact that the automobile was being operated from 2 to 3 miles in excess of the legal rate of speed. Under the circumstances of this case it can hardly be said that plaintiff was guilty of any negligence.

The evidence shows that plaintiff suffered loss of earnings of $200, and that the damage to his clothing, and his hospital, nurses', and doctor's bills amounted to $259.25. The testimony of his physi-

cian, which is uncontradicted, is that he suffered multiple contusions, abrasions, and lacerations on the face and chest and both extremities. He suffered a cut on the chin, which required two sutures, and which has left a small scar. He also suffered a severe brush burn on the right side of the face, which will leave a permanent scar, owing to the fact that grit and dirt went into the tissue and will remain there forever. He, of course, suffered the usual pains accompanying such injuries, and was required to stay in the hospital seven or eight days, and was confined to his bed at home for two weeks. The judge of the lower court, who saw the scar on his face and heard the testimony, reached the conclusion that $2,000 would be a fair award for the injuries, and we see no reason for disturbing it.

The judgment is accordingly affirmed.

WESTERFIELD, J., and DUNBAR, JR., Judge ad hoc, participating.

----

## ON REHEARING

WESTERFIELD, J. Upon re-consideration, we have reached the conclusion that the amount heretofore approved by us was excessive.

It is therefore ordered, adjudged, and decreed that our former decree be amended by reducing the amount awarded plaintiff from $2,459.25 to $1,959.25, and, as thus amended, it is reinstated.

Original decree amended and reinstated.