## MARQUEZ v. LE BLANC et al.*

### RIVET v. SAME.

#### Nos. 14207, 14208.

Court of Appeal of Louisiana. Orleans.
June 27, 1932.

---

*Rehearing denied October 3, 1932. Writ of certiorari denied November 28, 1932.

Wm. H. Talbot, of New Orleans, for Mrs. Zeigler.

Warren V. Miller, of New Orleans, for Mrs. Barbier.

Monroe & Lemann and Walter J. Suthon, Jr., all of New Orleans, for J. E. Le Blanc.

HIGGINS, J.

This litigation involves several actions ex delicto, in which the plaintiffs seek to recover damages for personal injuries, medical expenses, property loss, etc., alleged to have resulted from a collision between two automobiles on the public highway in the parish of St. James on May 9, 1929, at about 11:30 a. m. The cases were consolidated for the purpose of trial and decision.

Mrs. Jennie Marquez, widow of Louis Fred Zeigler, individually and as natural tutrix of her minor daughter, Yvonne Zeigler, sued to recover damages for personal injuries to her minor daughter and also for damages for personal injuries to herself and for medical expenses incurred in treating herself and her daughter from the defendant Joseph E. Le Blanc and his employer, the State Agricultural Credit Corporation, alleging that Le Blanc was solely at fault in causing the collision, in driving at an excessive rate of speed without keeping a proper lookout, and in traveling on the left, or wrong, side of the highway in negotiating a turn in the road.

The State Agricultural Credit Corporation averred in its answer that Joseph E. Le Blanc was not its employee, but was an independent contractor, for whose negligent acts it was not responsible, and, in the alternative, pleaded contributory negligence on the ground that Mrs. Zeigler was operating her car at an excessive rate of speed on the wrong, or left, side of the road, and without keeping a proper lookout.

Defendant Le Blanc answered denying that he was in any way at fault, and, in the alternative, pleaded contributory negligence on the same grounds as his codefendant.

Mrs. Hilda Barbier, alleging that she was a guest in the automobile that Mrs. Zeigler was driving, brought suit against Mrs. Jennie Marquez, widow of Louis Fred Zeigler, Joseph E. Le Blanc, and the State Agricultural Credit Corporation, in solido, to recover damages for physical injuries alleged to have been sustained in the collision, charging that the drivers of both cars were at fault in operating their respective automobiles at an excessive rate of speed, while attempting to negotiate a curve in the road, without keeping a proper lookout and without having their cars under control. She also alleged that Le Blanc was the employee of the Credit Corporation.

Defendant Le Blanc answered and denied that he was at fault, averring that the accident was caused solely and only through the negligence of Mrs. Zeigler.

Mrs. Zeigler denied that she was at fault in any way, or that she was guilty of any negligence which contributed proximately to the cause of the accident, and, in the alternative, specially pleaded contributory negligence, and that the automobile trip was a joint venture.

The State Agricultural Credit Corporation denied liability and pleaded that Le Blanc was an independent contractor.

The record also shows that Mr. Le Blanc sued Mrs. Zeigler to recover property damage to his automobile, alleging that she was at fault in the respects set forth in his answer to Mrs. Zeigler's suit. Mrs. Zeigler denied liability, averring that the accident was caused through the negligence of Mr. Le Blanc for the reasons, substantially, as stated in her petition.

It appears that Mrs. Zeigler borrowed the Chevrolet coach that she was driving from Mr. Arthur A. Costley and he sued her in the civil district court in New Orleans to recover $832 as damages to his automobile. She denied liability. It does not appear from the record whether this case was ever tried. The three cases previously mentioned were tried before the Twenty-Third judicial district court for the parish of St. James, and the judge dismissed Mr. Le Blanc's suit against Mrs. Zeigler on the ground that both parties were at fault. From this judgment no appeal was taken. The judge also dismissed Mrs. Zeigler's case against Mr. Le Blanc on the same ground. The defense of the State Agricultural Credit Corporation that Le Blanc was an independent contractor and not its employee was sustained, and both Mrs. Zeigler's and Mrs. Barbier's suits as against it were dismissed. The judge held that Mrs. Barbier was a guest in the automobile driven by Mrs. Zeigler, and, as the negligence of the driver could not be imputed to the guest, gave judgment in her favor against Mrs. Zeigler and Le Blanc, in solido, for $1,563, on the ground that the accident happened through their joint and concurrent negligence (Le Blanc's name being omitted from the judgment itself, as hereinafter explained). The court further held that, as Yvonne Zeigler was a minor, the negligence of her mother could not be imputed to the child, and awarded her the sum of $1,750 against Mr. Le Blanc alone. Mr. Le Blanc and Mrs. Zeigler appealed from these judgments. Neither Mrs. Barbier nor Mrs. Zeigler in behalf of her minor daughter appealed, but they have answered the respective appeals and asked that the respective awards be increased.

We shall first take up the primary question involved, that is, who was at fault and what was the proximate cause of the accident?

The record shows that Mrs. Barbier's sister lived at Donaldsonville, and, as Mrs. Zeigler had never been there, they planned to take an automobile trip there to pay a visit. Mrs. Zeigler, a widow, borrowed Mr. Costley's Chevrolet coach automobile. They started from New Orleans on Thursday, May 9th, about 7 o'clock in the morning. Mrs. Zeigler was driving the car, and, seated in the front by her, was Mr. Rivet, Mrs. Barbier's father, who had both his arms in plaster casts as a result of having them broken in an accident previous to that time. Mrs. Barbier was seated on the rear seat on the left side, Yvonne Zeigler, age 9 years, next to her, and Mrs. Zeigler's minor son to the right of his older sister. The weather was clear and the road dry. The party was proceeding on the graveled public highway, which was 35 feet in width, on the west bank of the river going in the direction of Donaldsonville. Mr. Le Blanc was driving his Dodge coupé car on the same road, going in the opposite direction, or toward New Orleans. Due to the fact that on the highway adjacent to the Mississippi river there were curves in the roadway, as both cars reached the neighborhood of Reagan's post office, and the Zeigler car was about to complete a curve in the road and the Le Blanc automobile about to enter it, the left sides of the automobiles collided, resulting in extensive damages to both, and Mrs. Zeigler, Yvonne Zeigler, and Mrs. Barbier were thrown violently into the roadway, rendered unconscious and seriously injured. Mr. Rivet and the Zeigler boy miraculously escaped injury. Mr. Le Blanc was slightly injured. The automobiles were removed from the road, and the injured parties sutured and given first-aid treatment, and those severely injured were then brought to the Charity Hospital in New Orleans.

The only witnesses to the accident were the occupants of the automobiles, except a Mr. Davis. Yvonne Zeigler and the Zeigler boy, on account of their youth, were not placed upon the stand. Mrs. Barbier, as a witness in her own behalf, testified that Mrs. Zeigler had been driving the Chevrolet automobile carefully on the right side of the road and at a slow rate of speed just prior to the collision, but, due to the fact that the accident happened very suddenly and she was rendered unconscious, she was unable to give any details concerning the respective positions of the cars and their respective speeds at the time the impact took place.

Mr. Rivet, Mrs. Barbier's father, as a witness in her behalf, testified that Mrs. Zeigler had been driving at a very moderate rate of speed on the right side of the road during the entire trip, and that, while she was negotiating the turn, she was driving about 10 miles an hour, on the right side of the road, or

toward the levee of the Mississippi river. Later, on cross-examination, he modified his testimony by saying that the Zeigler car was more toward the center of the road in the curve. He states that the Le Blanc car approached from the opposite direction at an excessive rate of speed and collided with the Chevrolet car about in the center of the road in the curve.

Mrs. Zeigler testified that she was an experienced driver and had been driving the Chevrolet car on the right side of the road at a moderate rate of speed and was keeping a proper lookout, and, as she was about to complete the turn in the road, while driving about 10 miles an hour on the right, or inside of the curve, adjacent to the foot of the levee, she noticed Mr. Le Blanc's car about a half block away coming from the opposite direction at a very high rate of speed, that, as he attempted to drive his car into the turn, it swerved to her side of the road and the left sides of the automobiles came in collision, and that thereafter she did not remember any more details of the accident, because she was knocked unconscious.

Mr. W. T. Davis, supervisor of public highways, a witness for Mrs. Zeigler, at the time of the accident was fixing a puncture in a tire on his car, which was parked on the right side of the road above the curve and facing toward New Orleans. He testified that he noticed Mr. Le Blanc's Dodge coupé going toward New Orleans at a rate of speed of about 40 or 45 miles an hour, and, as it turned into the curve, it suddenly swerved to the left and struck the Chevrolet car on the left side. He was unable to state how far the Le Blanc car had crossed the center of the road in swerving, but was positive that it entered the curve at a fast rate of speed and swerved towards its left, because of its great momentum.

Mr. Le Blanc testified that he had left Donaldsonville some two hours earlier, and that he was driving at about 35 miles an hour; that, as he attempted to negotiate the turn in the road, he was on the extreme right side adjacent to the ditch, or toward the woods side of the road, and that Mrs. Zeigler drove on a zigzag course to her extreme left side of the road, or Mr. Le Blanc's right side of the road, and that, as he could not pull further to his right on account of the ditch, the automobiles collided. He admits that he saw the Zeigler car for a considerable distance, swaying from one side of the road to the other; that he did not sound his horn; that he made no attempt to stop; and that, in driving, he pays little attention to curves and usually goes around a curve in the road at a rate between 30 and 35 miles an hour. He is the only witness who said the Chevrolet car was zigzagging on the road.

There is some evidence in the record by witnesses who appeared on the scene after the accident as to the respective positions of the automobiles in the roadway when they arrived. It was shown that the Chevrolet car was toward the center of the road, in a crosswise position, tending to block traffic, and that the Dodge car was on the right side of the road, toward New Orleans and facing in that direction. But the weight of this evidence is materially weakened, because these witnesses were unable to state whether or not the automobiles occupied these respective places on the road at the time of the accident, or whether or not they had been knocked there as a result of the impact, or driven there or pushed there by manual means.

As we read and understand the testimony of the witnesses, the inside part of the curve was toward the levee, and Mrs. Zeigler was driving on that side of the road. The Le Blanc car was on the outside part of the curve, or toward the woods side. It would appear to us that the tendency of the driver of the Chevrolet car would then have been to remain on the lower or inside part of the curve, whereas the driver of the Dodge automobile, driving at a rapid rate of speed approaching the curve on the outside, would have a tendency to pull or swerve toward the inside of the curve, or toward the side on which the Chevrolet car was traveling, in order to get the benefit of the grade in the curve. The photographs of the Chevrolet car introduced in evidence show that the left part of the front bumper, left front wheel, and left front headlight were not damaged, and that the major blow it sustained was on its left side, beginning at the windshield and continuing to the left rear door. Le Blanc admits that his front bumper on the left, left front headlight, left end of the front axle, and left front wheel and fender were badly damaged. This further indicates that the front of the Dodge car was coming in a direction toward the left side of the Chevrolet car.

Now, taking into consideration the testimony of Mrs. Zeigler, Mr. Davis, a disinterested witness, and Mr. Rivet, a witness for Mrs. Barbier, to the effect that the Zeigler car was on the right side of the road, traveling at a slow rate of speed, and that the Dodge car, according to their testimony and also Le Blanc's admission, was going at a fast rate of speed in going around the curve, together with the physical facts, as shown by the damages to the respective automobiles, it is our conclusion that the preponderance of the evidence clearly shows that the Chevrolet car was on the right side of the road, traveling at a moderate rate of speed, and that the proximate cause of the accident was the negligence of Le Blanc in attempting to negotiate the turn at a fast rate of speed, making no effort to slacken his speed by applying the brakes, and resulting in his car swerving to the left side of the road and coming into

contact with the Chevrolet car. We therefore conclude that the judgment of the trial court is manifestly erroneous in holding that Mrs. Zeigler was at fault and that she was guilty of negligence which contributed to the accident. The judgment of our learned brother, a quo, in holding Mrs. Zeigler liable, should therefore be reversed. Jameson v. Standard Oil Co., 2 La. App. 419; Riser v. Schreiber, 4 La. App. 340; Goodson v. Schuster's Wholesale Produce Co., Inc., 10 La. App. 486, 120 So. 689; Manget Bros. v. Henry, 13 La. App. 57, 127 So. 51; Cavin v. Hanagan, 14. La. App. 494, 130 So. 137; Lacy v. Lucky et al. (La. App.) 140 So. 857; Kennedy v. Oppenweyer, 11 La. App. 532, 121 So. 636, 123 So. 906.

Our conclusion on this point makes it unnecessary to consider the defense raised by Mrs Zeigler against the suit of Mrs. Barbier to the effect that their auto trip was a joint venture.

The next point to be considered is whether or not Le Blanc was the agent of the State Agricultural Credit Corporation, or an independent contractor. This issue was not argued before the bar.

■ Before taking up this point, in passing we might say that, as the trial judge sustained the defense of the State Agricultural Credit Corporation and dismissed Mrs. Barbier's suit as to it and Mrs. Barbier failed to appeal, the appeals taken by Mr. Le Blanc and Mrs. Zeigler in that case would not give Mrs. Barbier the right, by merely answering the appeal, to contend in this court that the State Agricultural Credit Corporation should also have been condemned as a defendant. But this is not true with reference to the suit of Mrs. Zeigler against Mr. Le Blanc and the Agricultural Credit Corporation, because in her case the suit was dismissed and she appealed. Therefore she is in a position to present to this court the issue of whether or not Le Blanc was an employee or an independent contractor of the Agricultural Credit Corporation.

The record shows that Le Blanc was drawing from the Agricultural Credit Corporation a salary of $250 a month and being paid $25 as an expense allowance incidental to the operation of his automobile. The Dodge car belonged to him personally, and it was left to his own volition to choose the means of transportation to perform the services that were required of him. His duties consisted of examining crops in a certain designated territory covering a portion of the state of Louisiana. He had no definite hours and was not under the supervision of any one as to how and when he was to perform his duties, except that he was required to make a written report every two weeks.

■ The authorities on the question involved are far from uniform and clear, and have been decided in a number of instances by a divided court. The main reason for a lack of satisfactory consistency in the jurisprudence on this subject comes from the fact that in compensation cases the courts have adopted a liberal construction in favor of the claimant where the defense was that the relation of employer and employee did not exist between the parties due to the fact that the claimant was working for an independent contractor. But in actions ex delicto for personal injuries and damages the courts apparently have adopted a strict interpretation and construction of the rule of respondeat superior. This situation is apparent from a reading of several compensation cases, including James v. Hillyer-Deutsch-Edwards, 15 La. App. 71, 130 So. 257; Burt v. Davis-Wood Lumber Co., 157 La. 111, 102 So. 87; Helton v. Tall Timber Lumber Co., 148 La. 180, 86 So. 729; Bell v. Albert Hanson Lumber Co., Ltd., 151 La. 824, 92 So. 350; Dick v. Gravel Logging Co., Inc., 152 La. 993, 95 So. 99; and Odom v. Lutcher & Moore Lumber Co., 7 La. App. 458.

In contrast to these decisions we have the opinions in certain damage suits, examples of which are Moffet v. Koch, 106 La. 371, 375, 31 So. 40; Robideaux v. Hebert et al., 118 La. 1090, 1095, 43 So. 887, 12 L. R. A. (N. S.) 632; Abate et al. v. Hirdes et al., 9 La. App. 688, 121 So. 775; Shea v. Reems, 36 La. Ann. 966.

Under these circumstances we feel that we are compelled to follow the decisions with reference to the damage suits, rather than the compensation cases.

In the case of McCarthy v. Souther, 83 N. H. 29, 137 A. 445, 446, decided by the Supreme Court of New Hampshire in 1927, a traveling salesman, using his own automobile and receiving a weekly allowance for expenses in addition to his salary, where the employer had no right to direct the manner of using the car, the court held that the employer was not liable under the doctrine of respondeat superior for injuries resulting from the negligent operation of the automobile by the salesman. In the syllabus of the case it is stated that:

"Under doctrine of respondeat superior, an employer is not liable for torts of his agent or servant committed in the course of employment unless he has the right of control and direction, so as to make the servant's act his own."

And in the opinion the court said:

"There is substantial authority for the proposition that the employer is liable for all torts of his agent or servant committed in the course of the employment, and under such authority the distinction between service in the course of the employment that is, and that is not, under the employer's control and direction is not observed. But the doc-

trine of respondeat superior underlying the employer's liability, and through which the liability has been established, is either disregarded or fallaciously applied when the distinction is not made. The doctrine rests on the employer's right of control and direction, and in reason applies only to the extent of the control and direction. What one does by another he does by himself, but what another does is not always the act of the one employing him to do it. Where no control may be implied from the situation and none has been expressly reserved, the mere fact that the relationship is of agency or service should not be enough to subject the employer to liability. And if, under the contract of employment, the employer has control over part only of the service to be rendered, liability for the manner in which the rest of the service is performed does not thereby follow.

"For service not subject to the employer's control and direction in its details, on principle, he is no more to be held for its faulty performance than for the liability of an independent contractor. If the employer may not direct how a thing shall be done, then what the agent or servant does is not the employer's act. That he has the right under the contract of employment to have the thing done is not enough to impose liability. That right obtains as well in cases of independent contracts. The further right to direct the manner of performance must appear. * * *

"That the service is in the furtherance of the employer's business is not enough. It must be so far his business as to be his own work and undertaking. The engagement of others to do the work does not affect his responsibility. But when the undertaking is that of the person engaged to do it, and the employer is only concerned in the result, the latter's responsibility fails since the undertaking is not his. * * *

"The failure to distinguish between undertakings to render a service to another and for doing another's business or work accounts for much of the conflict to be found in the cases in other jurisdictions. The theory of responsibility which the cases here have adopted is regarded as better supported by principle, if not by the weight of authority as well."

In Pyyny v. Loose-Wiles Biscuit Co., 253 Mass. 574, 149 N. E. 541, 542, decided by the Supreme Court of Massachusetts in 1925, the question was whether or not a traveling salesman, operating his own automobile and causing damages to the plaintiff, was acting within the course of his employment. The evidence showed that the salesman had no regular hours of work; that he could see the customers at any time; that he owned the automobile and used it in his business as a traveling salesman; that he was paid a salary, commission, and expenses for the operation of his car, in which he carried his sample case and advertisements. In holding that the doctrine of respondeat superior was not applicable, the court said:

"On the above facts it is plain Bancroft was his own master in respect to the time he should devote to the business of the defendant, and to the place within certain designated territory where he should solicit sales. It is also plain that it was his duty and not that of the defendant to register the automobile and obtain a license to operate it. The defendant had no right on the reported facts to direct the manner in which Bancroft should control his car. It assumed no obligation to keep the car in repair other than is involved in its agreement to pay the expense of operating it, or, as the plaintiff puts it in his brief, to pay 'so much per mile for the number of miles that he (Bancroft) operated said car for them in connection with his employment.' * * *

"The exceptions must be sustained and judgment entered for the defendant."

See, also, Ramp v. Osborne et al., 115 Or. 672, 239 P. 112; Aldrich v. Tyler Grocery Co. (1921) 206 Ala. 138, 89 So. 289, 17 A. L. R. 617; James v. Tobin-Sutton Co. (1923) 182 Wis. 36, 195 N. W. 848, 29 A. L. R. 457.

■ Counsel representing the other parties in this litigation have not referred us to any case in point, and, in view of the above authorities, it is our opinion that the judgment of the trial court, in holding that the Agricultural Credit Corporation was not liable as an employer for the negligent act of Le Blanc, is correct.

■ This brings us to a consideration of the quantum of damages which the injured parties are entitled to recover. As to the injuries and damages that Mrs. Zeigler sustained individually, it appears that the doctor's bills, amounting to the sum of $300, covering medical attention rendered to herself and daughter, were proven. The evidence shows that she was catapulted from her car as a result of the impact and was found lying unconscious in the road; that a doctor was summoned and placed some sutures in wounds in her scalp, the number of them not being given, and the length, depth and exact location of the wounds not designated. The report of the Charity Hospital, where she was taken the evening of the accident, shows "laceration and contusion of the scalp; contusion of the eye (her left eye is closed and the lid is edematose; she cannot open this eye); contusion of the left shoulder (patient complains of pain in the left shoulder and in the region of the upper part of the scapular, or left side in inspection); lacerations and contusions of face (there had been some bleeding from the scalp and left cheek)." She was admitted to the hospital on May 9, 1929, and discharged on May 14, 1929. She suffered considerable pain

and nervous shock, and she was treated at her home by Dr. Roeling, who did not testify, and Dr. F. T. Beatrous, who made four visits to her home, and thereafter she visited his office three times; the last time he saw her being about a month after the accident. The injuries were painful, but not permanent. We have concluded to allow her the sum of $500 for physical injuries, pain, and scars.

■ She also claims the sum of $832, the value of the Chevrolet car, which was demolished and for which amount she was sued by Mr. Costley, the owner thereof. That case has never been tried, and the evidence as to the extent of the damage to the Chevrolet car is not before us. Therefore we decline to allow this item. Mrs. Zeigler is therefore entitled to judgment for $800 covering her medical expenses and physical injuries.

■ As to the amount of the claim for damages for her minor daughter, Yvonne Zeigler, the trial court allowed $1,750, which award is attributable entirely to nonpecuniary damages. This girl is 9 years of age, and was rendered unconscious by the blow that she received. There was a gash in her cheek, necessitating twelve sutures, and her left forearm was torn from the elbow to the wrist, requiring eight stitches. She suffered a great deal of pain and was severely shocked. The scar on her cheek at first affected the closing of the eye, but, at the time of the trial, this condition was practically cured. While the doctor who treated her for two months testified that the scars would become less prominent as the child grew older, he was of the opinion that the scars were permanent. Counsel for defendant Le Blanc admits that the amount awarded for these injuries is not manifestly and substantially excessive. Counsel for plaintiff says that the award is inadequate.

In the case of Dyess v. Landry, 15 La. App. 403, 132 So. 242, an unmarried young lady 23 years of age received an injury to her right cheek which resulted in a permanent scar, and we awarded her the sum of $3,000.

In the case of Byrd et ux. v. Gallman, 174 La. 268, 140 So. 44, a young lady was allowed $2,000 for injuries which resulted in scars on her face and head. See, also, Teissier v. Stewart, 11 La. App. 167, 123 So. 174, and Hyman v. Salzer Plumbing Co., 18 La. App. 188, 135 So. 703. We believe that the amount awarded to Yvonne Zeigler should be increased to the sum of $2,500.

■ Finally, taking up the question of the amount of the claim for injuries and disfigurement of Mrs. Barbier, for which the trial judge allowed $1,563, which amount includes $63 representing actual pecuniary expense, her attorney contends that the award is inadequate, and the attorney for defendant Le Blanc argues that it is reasonable and just compensatory damages. She sustained a severe blow to the head, causing two lacerations in her scalp, one on the forehead below the hair line and the other on top of the head, and she was rendered unconscious for some period of time. The lacerations were sutured, and she was removed to the Charity Hospital for further observation and treatment. The next day she was sent to her home. Her chief injury and disfigurement is partial paralysis of the muscles that control the left eye, resulting in her being a victim of diplopia or "cross-eye." She was under the care of Dr. W. R. Buffington and Dr. Sam C. Cohen, both of whom found that she was suffering from a primary and a secondary squint on account of injury or inflammation to the sixth nerve, which pulls the left eye to the left when a person attempts to use it. The vision of the right eye is normal, except that, when it is used with the left eye, the patient suffers from double vision. In short, only when the left eye is covered is it possible for her to see normally with the right eye. The patient is unable to go to picture shows, or do any sewing, and she can neither read nor drive an automobile on account of defective vision. The doctors estimate a 25 per cent. disability in the use of the left eye. While they noticed some improvement in her condition at the time of the trial, November 6, 1930, about eighteen months after the accident, it is our opinion, from a reading of the medical testimony, that the condition is permanent. She is a young married woman, 23 years of age at the time of the accident, and, while she previously wore glasses on occasions, it appears that her sight was normal in other respects. For physical injuries, shock, suffering, and disfigurement, we have decided to allow the sum of $2,500, in addition to the $63.00 expenses. Brevard v. New Orleans Transfer Co., 10 La. App. 772, 123 So. 187; Teissier v. Stewart, supra; Claussen v. Cumberland Telephone & Telegraph Co., 126 La. 1087, 53 So. 357; Lonatro v. Palace Theatre Co., Inc., 11 La. App. 162, 123 So. 184. The judgment of the trial court will therefore be increased to $2,563.

In the case of Mrs. Hilda Rivet, Wife of Philip Barbier, v. J. E. Le Blanc et al. (No. 6468 of the docket of the district court), we note that in the reasons for judgment the court found the defendants Le Blanc and Mrs. Zeigler were at fault, but in the decree the court failed to include the name of defendant Le Blanc when, unquestionably, it was intended to render judgment also against him, because in the decree it is stated "that there be judgment against 'defendants' * * * jointly and in solido."

For the reasons assigned, it is ordered, adjudged, and decreed that, in the case of Mrs. Hilda Rivet, Wife of Philip Barbier, v. Joseph E. Le Blanc and Mrs. Jennie Marquez, Widow of Louis Fred Zeigler, No. 6468, of the docket of the Twenty-Third judicial district court for the parish of St. James, the judgment appealed from be reversed in so far as

it condemns the defendant Mrs. Jennie Marquez, widow of Louis Fred Zeigler, and it is now ordered that there be judgment in favor of Mrs. Jennie Marquez, widow of Louis Fred Zeigler, dismissing plaintiff's demand.

It is further ordered in that case that the judgment of the trial court be amended by granting judgment in favor of the plaintiff Mrs. Hilda Rivet, wife of Philip Barbier, and against the defendant Joseph E. Le Blanc, in the sum of $2,563, with legal interest from judicial demand until paid, and all costs of both courts.

In all other respects the judgment in that case is affirmed.

In the case of Mrs. Jennie Marquez, Widow of Louis Fred Zeigler, Individually and as Natural Tutrix of Her Minor Daughter, Yvonne Zeigler, v. Joseph E. Le Blanc and the State Agricultural Credit Corporation, No. 6461 of the docket of the Twenty-Third judicial district court for the parish of St. James, it is ordered, adjudged, and decreed that the judgment appealed from, in so far as it dismisses the suit of the plaintiff Mrs. Jennie Marquez, widow of Louis Fred Zeigler, individually, against the defendant Joseph E. Le Blanc, be annulled, avoided, and reversed, and it is now ordered, adjudged, and decreed that there be judgment in favor of the plaintiff Mrs. Jennie Marquez, widow of Louis Fred Zeigler, individually, and against the defendant Joseph E. Le Blanc, in the sum of $800, with legal interest thereon from judicial demand, until paid, and all costs.

It is further ordered in that case that the judgment appealed from be amended by increasing the award in favor of Mrs. Jennie Marquez, widow of Louis Fred Zeigler, as tutrix, in behalf of and for the use and benefit of the minor daughter, Yvonne Zeigler, and against the defendant Joseph E. Le Blanc, from the sum of $1,750 to the sum of $2,500, with legal interest thereon from judicial demand until paid, and, as thus amended, it is affirmed; all costs to be paid by defendant Joseph E. Le Blanc.

WESTERFIELD, J., absent, takes no part.