121 So.2d 275 (1960)
Irven Thomas THERIOT
v.
Lefebvre L. GIANELLONI, Jr.
No. 5024.
Court of Appeal of Louisiana, First Circuit.
May 31, 1960.
Dupont & Dupont, Plaquemine, for appellant.
Benton & Moseley, Baton Rouge, for appellee.
Before ELLIS and LOTTINGER, JJ., and LANDRY and PUGH, Judges ad hoc.
LANDRY, Judge ad hoc.
This is a tort action in which plaintiff seeks damages for the loss of his left eye eviscerated because of injury thereto when *276 plaintiff was struck by a pellet from a shotgun fired by defendant during the course of an argument between the adverse parties to this litigation.
The lower court rendered judgment in favor of plaintiff in the sum of $3,859.50 from which award plaintiff has prosecuted this appeal contending the amount allotted is insufficient. Defendant has answered the appeal praying that the judgment in favor of plaintiff be reversed on the ground plaintiff was the aggressor in the incident which culminated in the discharging of the weapon and provoked the assault by using abusive language of such character as to justify defendant's action. Alternatively, defendant maintains the award of the trial court is adequate and should not be increased.
The incident out of which this litigation arose occurred on a plantation belonging to defendant's father. More specifically the assault took place near a Shell Oil Company field office and installation situated upon the property.
On the date in question plaintiff, an ardent hunter, on vacation from his employment with Shell Oil Company, had been hunting on property belonging to one Gillen (adjoining the plantation owned by defendant's father) and had killed five squirrels. Upon terminating his hunting activities, plaintiff drove his automobile to the aforesaid company field office which was situated nearby and at which were to be found certain facilities plaintiff desired to use in dressing and preparing his game.
The evidence shows that on the premises occupied by its field office the company had placed a water faucet and ice box for the use and convenience of its employees. It further appears (without dispute) that these facilities were frequently used by Shell Company employees and occasionally used by non-employees in the dressing and preparation of squirrel and other game bagged in the general area. Near the water faucet was situated an iron post to which a hook had been attached in order that game might be suspended therefrom to aid in the process of cleaning. All of the mentioned implements were located near a public road running in front of the premises in question and could easily be seen by a motorist passing upon the highway.
At the time of the incident in question, plaintiff was standing near the iron post dressing a squirrel while at the same time engaging in conversation with two on duty fellow employees, H. D. Simmons and Lucien Mire, Jr., who were admiring plaintiff's proficiency in the art of skinning game. As plaintiff and his two companions were thusly occupied, defendant (who is shown to hold some degree of supervisory authority over the family estate) drove by in his automobile and upon observing plaintiff in the act of dressing game thought defendant had been hunting on the Gianelloni property without permission and, with the view of ejecting plaintiff as a trespasser, immediately stopped his car. Defendant alighted from his vehicle and approached plaintiff brandishing a shotgun under his right arm and wearing a Colt pistol in a holster held by a gun belt encircling his waist.
The events which thereafter transpired are in serious dispute between the contending parties. At this juncture we deem it appropriate to point out that during the trial in the court below plaintiff and his co-workers Simmons and Mire all testified in person whereas the testimony of defendant was submitted (by stipulation between opposing counsel) in the form of defendant's pre-trial discovery deposition taken in conformity with controlling statutory provisions.
The testimony of plaintiff and his fellow employees is substantially to the effect defendant was obviously irritated and angry as he approached them with the shotgun pointed in their general direction but not necessarily aimed directly at them. These witnesses all testified defendant walked to the edge of the road, stopped at a distance estimated to be between 20 and 25 feet away and in a belligerent and abusive *277 manner demanded to know where plaintiff had "gotten those g __ d ___ squirrels" to which plaintiff replied he had not killed them in defendant's woods. Defendant is then reputed to have stated, "I am damned tired of you all shooting all the squirrels around here and I am going to take those squirrels." To this latter remark plaintiff is said to have responded, "I don't think you are going to take them." whereupon defendant fired the shotgun into the ground approximately midway the distance between defendant and plaintiff. Two or three of the pellets from the shell ricocheted and struck plaintiff, one lodging in plaintiff's left eye. The evidence shows that at the time defendant fired the gun plaintiff was unarmed except for a small knife plaintiff was using to dress his game. It further appears that plaintiff made no effort to further arm himself and neither by word or deed threatened defendant with bodily harm.
Defendant's version of what transpired understandably differs considerably from that related by plaintiff and his companions. According to defendant, he was in the course of a regular Sunday morning inspection of his father's property and stopped his automobile when he noted plaintiff cleaning game near the oil company office situated on the estate belonging to his family. He explained his possession of the shotgun and pistol by attributing same to his hobby of collecting guns. He stated he possesses numerous weapons of various types and is accustomed to riding about the family properties armed with one or more weapons which he frequently uses to engage in either the recreation of target practice or the more useful purpose of shooting buzzards which may be attacking new born calves or killing hawks or other predatory fowl. Defendant stated he stood on the edge of the road approximately 20 feet away from plaintiff and asked plaintiff "Where did you get those squirrels?" Plaintiff then replied, "Not in your g __ d--- woods." Following the foregoing remark by plaintiff defendant rejoined, "Well, if you didn't get them in my damn woods then go and skin them where you did get them." According to defendant plaintiff then stated, "No little smart aleck bastard like you is going to tell me to get off this place." It is conceded by defendant that the latter remark by plaintiff so infuriated defendant he fired the gun into the ground in an effort to convince plaintiff he intended plaintiff should leave the premises immediately as plaintiff was trespassing thereon. We deem it only fair to state it is not contended by any witness that defendant fired the gun directly at plaintiff.
The only defense advanced herein is predicated upon the contention defendant's action in firing the gun was allegedly justified by provocation sufficient to prompt a reasonable individual to retaliate for the profanity indulged in by plaintiff. In this regard, learned counsel for defendant has quoted at length from Smith v. Parker, La. App., 59 So.2d 718, which case reviews at considerable length the jurisprudence of this state on the question posed. For reasons which will hereinafter become obvious, we pretermit all consideration of the question of law thus raised by defendant.
The question of provocation or justification of an assault (whether tendered as an absolute defense or in mitigation of damages for personal injuries) is purely a matter of fact to be determined in the light and circumstances of each individual case. In the case at bar the initial trier of fact has resolved this crucial issue against defendant in his written reasons for judgment and we find no manifest error in such conclusion.
Defendant strenuously argues the mere numerical superiority of witnesses in favor of plaintiff does not necessarily insure their veracity. More specifically defendant maintains that since plaintiff and his witnesses all testified substantially to the same effect such circumstance should be regarded with suspicion. The answer to these contentions is simply that we find nothing in the record *278 to indicate manifest error herein on the part of the learned trial judge. Our brother below saw and heard plaintiff and his witnessesan opportunity he did not have with respect to defendant. Undoubtedly the learned trial judge accepted the version of the incident narrated by plaintiff. He apparently attached no significance to the fact that the testimony of plaintiff and his witnesses was remarkably similar. In the absence of a record which shows such judgment to be manifestly erroneous we must accept the express conclusion of the trial court that defendant and not plaintiff was the aggressor.
There remains for consideration only the question of quantum. Our factual determination that defendant and not plaintiff was the aggressor disposes of defendant's argument that the award of the lower court should not be increased because plaintiff's alleged abusive language provoked the altercation and such reputed provocation may be considered in mitigation of damages allotted.
Defendant's final contention is that the lower court correctly allotted plaintiff damages of $3,000 for the loss of his eye (the remaining $859.50 being for special damages) considering the testimony of record which shows defendant is a college student with no assets. In this regard defendant relies upon the well established rule that the ability of a defendant to respond in damages may be considered in fixing an award for personal injuries. In this same connection defendant points with confidence to the written reasons for judgment filed herein by the learned trial judge wherein he states he was of the opinion plaintiff was entitled to recovery far in excess of the sum assigned but that recovery was limited to the extent of $3,000 because of defendant's financial inability to answer in damages. On this important phase of the case the record confirms defendant's contention that he is a 23 year old, third-year college student with no income and virtually no assets. However, the record further indicates defendant possessed of considerable potential wealth in that his father is the owner of a rather large plantation on which is located an undisclosed number of producing oil wells. We believe the record justifies the conclusion defendant's potential inheritance and earning ability are of considerable proportions. While potential ability to pay may not be made the primary or exclusive basis of an award in damages neither may it be completely ignored and disregarded. The record convinces us that defendant's social, economic and educational background is such that in the normal course of events he may reasonably be expected to attain at least moderate financial success which circumstances must be considered in determining his ability to recompense an injured party in damages for personal injuries inflicted.
We believe the following language appearing in Lacaze v. Horton et al., La.App., 100 So.2d 252, 255, particularly appropriate:
"The evidence in the instant case does establish the fact that defendant is a man of limited means, but we do not think it justifies the conclusion, as argued by counsel, that `* * * his health is such that he is barely able to provide for his family.' After consideration of all the facts bearing upon the opposed contentions of the parties litigant, we are impelled to the conclusion that the judgment in the instant case is an extreme and unwarranted application of the principle that, in fixing the quantum of damages allowed, consideration should be given to the ability of a defendant to pay. It must be borne in mind that this principle is not intended to completely relieve a defendant of liability for reparation of damages inflicted by his own negligence, nor should it be considered as justifying the reduction of the allowance of damages to a bare minimum. Either of these alternatives, in our opinion, would be an extreme application of the principle and would result in effecting a gross injustice toward *279 a plaintiff, under the guise of the application of a humane consideration for the plight of an impecunious defendant."
In the case at bar the record shows plaintiff, who was 45 years old at the time of his injury, is married and the father of three children one of whom, a teenager, resides with the plaintiff and his wife. Plaintiff is employed by the Shell Oil Company as a maintenance foreman at a salary of approximately $500 per month. Following his injury plaintiff was immediately taken to a hospital in great pain. He was administered medication to relieve his suffering and an attempt was made to save his eye by removing the pellet therefrom with the aid of a magnet but the pellet being of non-magnetic material could not be withdrawn by this procedure. Following this unsuccessful attempt to save plaintiff's sight the eye was removed a few days thereafter. The surgical procedure produced considerable pain which was followed by additional pain, irritation, soreness and infection of the eye socket attendant upon the fitting and wearing of an artificial eye with which plaintiff was provided. It is necessary for plaintiff to remove the artificial eye twice daily and clean the cavity with medication prescribed by his attending physician. Irritation of the sensitive tissues frequently causes mucus to exude from plaintiff's eye to his embarrassment and discomfort. This condition coupled with plaintiff's partial loss of depth perception has caused plaintiff to become self-conscious, nervous and irritable and has greatly curtailed plaintiff's indulgence in his favorite sport of hunting.
In an effort to prevail upon us to restrict plaintiff's recovery to the sum awarded by the trial court, learned counsel for defendant directs our attention to Dufrene v. Rodrigue et al., La.App.1949, 38 So.2d 511, in which an award of $3,000 was allowed for the loss of an eye and Moore v. Blanchard, 1949, 216 La. 253, 43 So.2d 599, in which recovery of $4,000 was granted for a similar injury.
It is now the well settled jurisprudence of this state that in recent years increased awards for personal injuries are justified because of the decreased purchasing power of the dollar. An award of $3,000 or $4,000 made in 1949, would not do substantial justice between parties litigant in view of the diminution in dollar value which has since transpired. Moreover, we note with considerable interest the following pertinent language appearing in Moore v. Blanchard, 216 La. 253, 43 So.2d 599, 600:
"From the standpoint of just compensation, unquestionably the award of $4000 made in favor of this plaintiff for the loss of his eye is not too large. This is true irrespective of whether or not the jury, in fixing it, sympathized with him or believed the testimony of some of the witnesses that Blanchard committed an aggravated assault. In the jurisprudence of this state are decisions approving much larger compensatory awards for similar losses. Claussen v. Cumberland Telephone & Telegraph Company, 126 La. 1087, 53 So. 357; Johnson v. Pickering Land & Timber Company, 132 La. 425, 61 So. 514; Brevard v. New Orleans Transfer Company, 10 La.App. 772, 123 So. 187."
We also note with considerable interest the case of Johnson v. Louisiana Coca-Cola Bottling Co., La.App.1953, 63 So.2d 459 in which the sum of $12,500 was awarded for the loss of an eye, the injured plaintiff having a life expectancy of 40.36 years which is somewhat in excess of the life expectancy of the plaintiff at bar.
We believe our learned brother below erred in completely ignoring and disregarding the financial potential of the present defendant and the award granted must be increased. Considering all of the circumstances of the case at hand, we feel judgment in favor of plaintiff in the sum of $10,000 for the loss of his eye will accomplish substantial justice between the parties litigant. The special damages sustained *280 by plaintiff in the amount of $859.50 are, of course, recoverable in addition to the award hereinabove granted.
For the reasons hereinabove assigned, the judgment of the lower court is hereby amended by increasing the award to plaintiff for the loss of his eye from the sum of $3,000 to the sum of $10,000 and judgment rendered in favor of plaintiff Irven Thomas Theriot and against defendant Lefebvre L. Gianelloni, Jr., in the sum of $10,859.50, together with legal interest thereon at the rate of five (5%) per cent pen annum from date of judicial demand, until paid; all costs in the lower court and on appeal to be paid by defendant Lefebvre L. Gianelloni, Jr.
Amended and affirmed.