## No. 11,115

## Orleans

### ABATE ET AL. v. HIRDES ET AL.

(November 26, 1928.  Opinion and Decree.)
(January 7, 1929.  Rehearing Refused.)
(February 13, 1929.  Writs of Certiorari
Refused by Supreme Court.)

Woodville and Woodville, of New Orleans, attorneys for plaintiffs and appellants.

Deutsch and Kerrigan, of New Orleans, attorneys for defendants, appellees.

JANVIER, J.  Plaintiffs' son, a child four years old, was killed by an automobile truck at the corner of Perdido and Clara Streets in New Orleans. The child had been allowed by its parents to wander into the street and, in rolling his hoop across the street, ran into the path of the approaching truck and was killed. There are two defendants, the owner and driver of the truck, and the Item Company, Limited.  Plaintiffs contend that The Item Company, Limited, is responsible for the negligence of the driver of the truck, if there was negligence, by reason of the fact that the truck was engaged in the delivering of newspapers published by that company, and because the driver, Christopher Hirdes, was paid a weekly salary or allowance by the defendant company.  Both defendants contend that the operator of the truck was not negligent; that the speed was not excessive, and that the approximate cause of the accident was the negligence of the parents of the child in allowing it to wander into a place of danger.  It is argued that the speed of the truck at no time exceeded fifteen miles an hour, and that such a speed is reasonable and cannot constitute negligence.

The speed of automobile trucks and other vehicles should be regulated in accordance with the surrounding circumstances.  What might be excessive in one case might be entirely reasonable in another, and a speed of fifteen miles, while entirely reasonable under some circumstances, would be grossly excessive under others.  It appears to us here that either the speed of the truck was excessive, or the driver was not exer-

cising proper care and caution in driving it, or that he did not take the necessary steps to discover the presence of the child, and to stop the truck after discovering it.

It is argued that the negligence of the parents of the child, in allowing it to wander into so dangerous a place as a public street, precludes recovery on their part, for the reason that this negligence continued to the very moment of the accident and prevents the application of the doctrine of the last clear chance.

It appears to us that the parents were negligent in allowing the child to wander into the street, but we believe that this negligence, after the child left the presence of the parents, and after they no longer could instantly control its actions, became passive negligence and no longer actively continued. If this negligence became passive, then the child, as long as he remained in a position of danger, was in the same situation as is an inanimate object, such as a truck abandoned by its driver. It was held by this court in Canal Steel Works, Inc., vs. City of New Orleans (Public Belt Railroad), No. 10,415, decided on November 13, 1928, that, if a truck is left on train tracks, while the placing of it there may be negligence, yet, after the driver has left it and gone away, his negligence becomes passive; and that if the engineer of the approaching train, by the exercise of ordinary care, could discover its presence in time to avoid striking it, his failure to do so is the proximate cause of the accident. In other words, the doctrine of the last clear chance applies.

To the same effect is the decision of this court in Alexandria Refining Co. vs. Missouri Pacific, 1 La. App. 470, in which the court said:

"We think this case governed by the doctrine of those decisions and not by that applied in the cases cited by defendant; believing as we do that the truck was and for some time had been halted on the track when backed into by defendant's train whose crew was negligent in not discovering it and actively so in backing against it, when such negligence, therefore, being the proximate cause of the accident, while the negligence of the truck driver, though continuing down to the moment of the accident, was at that time merely passive and hence not the proximate cause but only a condition of the accident."

The same reasoning applies here. The "owner" of the child, to-wit, the parents, (the child being itself incapable of being contributorily negligent), were unquestionably negligent in allowing him to wander into the street, and had they remained in his immediate presence, certainly every instant it remained in the street would have constituted a fresh act of negligence on their part and this negligence would have been held to preclude the application of the doctrine of the last clear chance. However, when the parents left the child, so that they could no longer instantly control his movements, their negligence then became passive and, as we have already said, the child occupied the same legal status as did any inanimate object. It appears to us that the driver of the truck should have discovered the presence of the child and should have been able to control his truck so as to avoid the unfortunate accident. Having failed to do so, he was guilty of negligence, which negligence was the proximate cause of the death of the child. The driver of the truck, then, is liable to the plaintiffs.

Is the other defendant, The Item Company, Limited, also liable?

If Hirdes was the agent of the Item Company, that company is responsible for his negligent acts. If he was an independent contractor, The Item Company is not

liable for his acts. Whether he was an independent contractor or an agent depends on whether or not The Item Company had the right of supervision and control. The actual exercise of that right is not essential. The question depends solely upon the existence of the right. It is said that because The Item Company paid Hirdes a weekly salary, or stipend, of $20.00, he became the agent of the company, and it became liable and responsible for all acts done by him within the scope of his employment. We do not believe that the payment of a regular wage, or stipend, or salary, whatever it may be called, renders the payer liable for all of the acts of the receiver. It appears from the evidence that The Item Company had nothing whatever to do with the operations of the truck. It was owned by Hirdes. He paid for the gasoline and oil and repairs. He used it in other hauling, or in his private affairs. The only requirements that The Item Company made were two: First, that he deliver no other afternoon paper, and, Second, that he produce satisfactory results in the territory allotted to him. As long as he did this the company had no right to complain as to his method of driving the truck, as to the route taken by him in delivering his papers, as to who should help him in his work, as to whether he should drive the truck himself or employ someone else, or as to any other matters relating to the conduct of his particular end of the business.

A case very similar to the one before us was presented to the Supreme Court of Louisiana in Shea vs. Reems, 36 La. Ann. p. 966. At first reading the facts of that case seem almost identical with those here and the decision of that case, unless closely scrutinized and analyzed, would seem to be decisive here. In that case, the court said: ·

"The evidence leaves no doubt that Rickert was employed by defendant, Reems, to peddle goods for the latter at a fixed wage of six dollars per week, with an additional compensation of two per cent on the price of all goods sold, and with the privilege of keeping any excess of price for which he sold the goods, over and above the prices limited by Reems."

It was held that Rickert was the agent of Reems. The reason for the decision, however, was that the owner and driver of the wagon were exclusively in the service of, and under the control of Reems. That does not seem to have been the case here. It is true that the court stated that the contract to pay regular weekly wages was persuasive at any rate of the fact that one person was under the control and supervision of the other, and as the court said:

"It would be difficult to imagine one person binding himself to pay a fixed compensation weekly for the service of another, if the latter were to be emancipated from the former's direction and control and left free to perform the service or not at his whim, or to perform it in a manner opposed to the employer's will, and, perhaps, yielding him no benefit."

If, therefore, there were no evidence to the contrary, it might be assumed that the payment of wages by The Item Company to Hirdes gave The Item Company the right to supervise and control him in the conduct of his business. There is, however, no room here for conjecture, as the testimony shows that The Item Company did not have this right. In fact, it does not seem that the contract really provided for what may strictly be called salary, or wages. Mr. Thomson of The Item Company states that the only reason for the payment of a weekly amount to Hirdes was that the company knew what his living requirements were, and that the territory allotted to him would probably not produce

sufficient commissions to afford him a proper living; that it was to the interest of The Item Company to have someone solicit subscriptions and deliver papers in that territory, and that in order to obtain a man of Hirdes' ability, the company had supplemented his commissions by what really was no more than a gratuitous addition to his earnings. Mr. Thomson further testifies that The Item Company has similar contracts with others, and even with newsboys, and that newsboys in some locations find it impossible to make a satisfactory living and that, in those cases, the boys are allowed a regular fixed amount periodically. Surely, it could not be said that because the company allows a newsboy a small sum each day he becomes the employee of the company in the sense that it becomes responsible for his negligent acts. Hirdes was notihng more than a distributor; acting independently; purchasing his wares from the manufacturer and selling them to his customers. If The Item Company is liable here, it appears to us that every distributor, every retailer, may by his negligent acts make the wholesaler or manufacturer liable under circumstances over which the manufacturer has no possibility of exercising control or supervision.

Of course, the fact that the name "Item Tribune," was painted on Hirdes' truck is of no importance whatever, and cannot be said to in any way affect the issues involved.

The amount allowed the plaintiffs by the trial court was $2,000.00. It is impossible to estimate and fix accurately in dollars and cents the value of human life. No parent, no matter what his circumstances, would be willing to fix a price at which he would sell the life of his child and therefore, the courts must, to the best of their ability, looking at the accident retrospectively, determine what is a just compensation for the losses sustained.

In view of the jurisprudence of this and of the Supreme Court, we are of the opinion that the amount awarded is correct.

It is therefore ordered, adjudged and decreed that the judgment appealed from be affirmed.

WESTERFIELD J. Being of the opinion that the evidence fails to establish that Hirdes was an independent contractor, I respectfully dissent.