GALLAHER v. RICKETTS et al.

No. 17003.

Court of Appeal of Louisiana. Orleans.
March 27, 1939.

Benjamin Y. Wolf, of New Orleans, for appellant.

John May of New Orleans, for appellee Times-Picayune Pub. Co.

McCALEB, Judge.

On July 30, 1936, at about 9:30 a. m., the plaintiff, Miss Laura Gallaher, received personal injuries when she was struck by an automobile owned and operated by a young negro minor named Nathaniel W. Ricketts.

On May 11, 1937, the present suit was instituted by the plaintiff for recovery of $5000 damages against Mrs. Nathaniel W. Ricketts, the mother of the minor, and the Times-Picayune Publishing Company, who was alleged to be Ricketts' employer. On May 14, 1937, the sheriff made a return to the citation issued to Mrs. Ricketts in which he stated that he had been unable to serve her because she had died prior to the institution of the suit. As soon as the plaintiff was advised of Mrs. Ricketts' death, she brought another suit in the Civil District Court, bearing docket No. 222,761, against the minor, Nathaniel W. Ricketts, and prayed for the appointment of a tutor or curator ad hoc to represent him in that proceeding. Her allegations in that suit were substantially the same as those contained in the original proceeding against Mrs. Ricketts and the Times-Picayune Publishing Company. In accordance with the prayer of plaintiff's petition in the suit against the minor, a curator ad hoc was appointed to defend him.

After issue was joined by the answers of the defendants to these suits, plaintiff, on January 21, 1938, secured an order con-

solidating the matters for trial and on March 15, 1938, the cases were heard.

On April 7, 1938, a judgment was rendered in favor of plaintiff and against the defendant Mrs. Nathaniel W. Ricketts for $1,000 but her suit against the defendant Times-Picayune ·Publishing Company was dismissed. Subsequently, the judge of the district court was advised that he had committed error in granting a judgment against Mrs. Ricketts in view of the fact that she was dead and had never been served with citation. This mistake was corrected by him on April 20, 1938, by the rendition of a judgment for $1,000 in favor of plaintiff and against the minor, Nathaniel W. Ricketts (appearing through his curator ad hoc), in the suit bearing docket No. 222,761 of the district court. No appeal has been taken either by Ricketts or the plaintiff from that judgment.

On April 25, 1938, plaintiff prosecuted a· devolutive appeal to this court from the judgment of the district court which dismissed her suit as against the defendant Times-Picayune Publishing Company.

█ We also note that the Charity Hospital of New Orleans filed an intervention in the case, seeking judgment against the defendants for services rendered by it to the plaintiff. The judgment below is silent with respect to this intervention. The failure of the court to mention it in the decree is tantamount to a dismissal of the claim. No appeal has been prosecuted by the hospital and it is not before this court.

The questions to be determined on this appeal are therefore limited to a consideration of the asserted error of the court below in failing to maintain plaintiff's action against the Times-Picayune Publishing Company.

Plaintiff alleges that on July 30, 1936, while she was crossing Canal St. at the intersection of Loyola Ave., proceeding on foot from the upper side thereof to the neutral ground, an automobile, traveling on Canal St. in the direction of the Mississippi River, ran into her, knocking her down and injuring her; that the car causing her damage was being driven by Nathaniel Ricketts, the minor son of Mrs. Nathaniel Ricketts; that the said Ricketts was in the employ of the Times-Picayune Publishing Company as a newspaper carrier and was, under instructions of his employer, on his way to the latter's office to attend a meeting; that he was driving the automobile at an excessive rate of speed; that he failed to stop after the accident and tried to escape, it being necessary for the police to chase him for several blocks in order to apprehend him; that, under the City Traffic Ordinance, plaintiff, having entered the intersection prior to the time the Ricketts automobile reached it, had the right of way and that, notwithstanding this, Ricketts would not yield said right of way to her but, on the contrary, made no effort to avoid striking her. Plaintiff further averred that, as a result of the accident, she sustained a fracture of the left fibula (the outer bone of the lower leg), contusions of her lower ribs, contusions of her left knee with possible separation of semi-lunar cartilages; that, after the accident, she was taken to the Charity Hospital where she was confined until August 24, 1936; that she was thereafter confined to her home for 30 days; that she is still disabled and that she is entitled to recover damages in the sum of $5000.

In its answer, the defendant Times-Picayune Publishing Company admitted the happening of the accident but denied any negligence on the part of Ricketts. In the alternative, it pleaded that if it should be found that Ricketts was at fault, then plaintiff was guilty of contributory negligence barring her recovery. It also denied that Ricketts was its agent or employee and averred that, on the contrary, he was operating a carrier route for the delivery of its newspapers for his own account; that the automobile was his individual property and that he was and is an independent contractor.

The evidence offered by plaintiff at the trial, in an effort to substantiate the allegations of her petition concerning Ricketts' negligence, consists of the testimony of herself, Oscar Ballaron, a police officer, Daniel Weintraub and Robert Ray. The only eye-witness to the accident produced by the defense is the defendant Ricketts.

A perusal of Ricketts' statement of the occurrence has been sufficient to convince us that he was guilty of gross negligence. He declares, in substance, that he was driving his automobile close to the neutral ground on Canal St. in the direction of the Mississippi River at a speed which he supposes to be 25 miles per hour; that, in approaching the intersection of Loyola Ave., he did not see the plaintiff but that "it seemed like she popped up all of a sudden";

that he did not blow his horn; that, after striking the plaintiff, he became excited and frightened and ran through two red semaphores situated on Canal St. at the corners of Elks Place and Rampart St. He intimates in his testimony that plaintiff walked into the side of his automobile and that she was struck by the side of his right front fender.

It suffices to say that Ricketts' beliefs are not impressive and we experience no difficulty in resolving that he ran across the intersection of Loyola Ave. at a high rate of speed without exercising any lookout whatsoever and without having his automobile under control.

Counsel for the defendant publishing company criticizes the testimony submitted by plaintiff and her witnesses and states that their evidence is so contradictory that it is impossible for us to conclude that she has proved a case of actionable negligence. It is true that the witnesses produced by plaintiff seem to be confused with respect to the part of the intersection where the accident happened and that at least one of her witnesses states that she was crossing the street in a direction opposite from that alleged by her in her petition. But, in spite of these discrepancies in her evidence, we do not think that they are serious enough to materially discount the validity of her claim as we are satisfied, after considering all of the testimony in the case, that she was run down by Ricketts who apparently exercised no care whatsoever. We are also of the opinion that the proof is insufficient to establish that the plaintiff was guilty of contributory negligence. She was crossing the street at the place designated for use by pedestrians. She had entered the intersection prior to the time the automobile arrived there and could not anticipate that Ricketts would not have his car under control or that he would be so reckless as to run into her. Under Sec. 2 of Art. IV of Ordinance No. 13,702, Commission Counsel Series of the City of New Orleans, it is provided that:

"(a) The operator of any vehicle shall yield the right of way to a pedestrian crossing the roadway within any marked crosswalk, or within any unmarked crosswalk at an intersection, provided pedestrian has started across the street before the vehicle shall have entered the intersection, except at intersections where the movement of traffic is being regulated by po-lice officers or traffic control signals, or at any point where a pedestrian tunnel or overhead crossing has been provided."

The plaintiff stated that, at the time she started across Canal St., there were no automobiles in sight and it is reasonable to believe that, had Ricketts exercised the slightest degree of care, he would have avoided the accident.

Finding that Ricketts was guilty of actionable negligence, we next consider whether he was the agent and employee of the Times-Picayune Publishing Company and whether he was, at the time of the accident, acting within the course and scope of his employment.

The defendant publishing company maintains that its relation to Ricketts was in no sense that of employer and employee and that he was an independent contractor. The solution of this problem depends upon whether, under the facts showing the nature of Ricketts' employment, the publishing company was vested with the right of supervising and controlling the work performed by him in his line of duty. See Taylor et al. v. Victoria-Nav. Co. et al., La.App., 176 So. 519.

Let us therefore consider the evidence adduced in this case with respect to the relationship existing between the parties. In support of its plea that Ricketts is an independent contractor, the defendant tendered as witnesses Mr. Donald Coleman, its circulation manager, and Mr. George E. Flynn, its employee in charge of the distribution of newspapers in the City of New Orleans. Mr. Coleman declared that Ricketts was employed under a written contract. The agreement was not offered in evidence by the defendant and its failure to produce it warrants the presumption that it would not have been helpful to defendant's contention. In view of its absence, our determination of the relation existing between the parties must of necessity be based upon our appreciation of the oral evidence submitted. A summary of this evidence reveals the following facts:

Ricketts, a young negro 16 years of age, was employed by the Times Picayune Publishing Company as a route carrier of its newspapers, his designated territory being the Gentilly Terrace section of the City of New Orleans. He was not employed for any specific length of time and the defendant could, at its pleasure, dispense

with his services. The defendant was admittedly the owner of the route over which he distributed. its newspapers.

Ricketts did not receive a regular salary or stipend from the defendant company and he was compelled to pay it for the papers delivered to him, his compensation being in the form of a commission of 40¢ on every $1 worth of newspapers disposed of.

Defendant's witnesses proclaim that the company was not interested in the means used by Ricketts in accomplishing his tasks and that it did not care whether he delivered the papers on foot, by automobile or in a push cart. They also declare that the automobile involved in this suit was Ricketts' own personal property and that the publishing company did not advance any monies toward the purchase of the same. They admit, however, that they knew that Ricketts was using an automobile in making the deliveries of newspapers and their assertions clearly indicate that his use of some sort of vehicle was contemplated by the company since the route over which the newspaper deliveries were made comprised quite a large territory. That Ricketts' use of an automobile in performing his duties was taken into consideration by the defendant is plainly manifested by the fact that it paid to him the sum of $5 per week in reimbursement for the gasoline, oil and other expenses he incurred in operating the machine over his route.

It is also shown that Ricketts was required to post with the defendant a guarantee of $150, signed by two responsible persons, to insure it against his failure to account for the collections made by him from its customers. In addition to this, it appears that the defendant conducted a class of instruction for its newspaper carriers where "pep" talks were given and ideas exchanged with a view of promoting and stimulating the sales of its newspaper. Defendant's witnesses assert, however, that it was not compulsory for the carriers to attend these meetings and that it was entirely optional with them.

██ ██ It is the defendant's contention that, under the state of facts above set forth, Ricketts was an independent contractor and not its employee. In our view, however, the evidence submitted compels the rejection of such a conclusion. As we have above stated, the true test of the relation between the parties is founded upon the right of the employer to supervise and control the movements of the employee. Whether the employer actually exercises control or supervision is of no moment. The important question is whether, from the nature of the relationship, he had the right to do so. On the other hand, the term "independent contractor" connotes a freedom of action and choice in respect of the undertaking and a legal responsibility on the part of the contractor in case the agreement is not fulfilled in accordance with its covenants.

Can it be resolved in the case at bar that the defendant did not possess the right to control the method adopted by Ricketts in distributing its newspapers and are we justified in concluding that the defendant expected to hold Ricketts responsible for the damage it might suffer in case he did not perform the undertaking assigned to him in proper fashion? We think not. Ricketts' employment could be terminated by the defendant at any time. He acquired no interest in the route over which he distributed the papers. In truth, he was merely a cog in the wheel of the defendant's enterprise. It would be fallacious to say that the defendant could not, if it had seen fit to do so, supervise his route by having another one of its employees accompany him on his deliveries and direct him in regard to the manner in which distribution of the newspapers should be made.

The facts of this case are strikingly similar to those in Davidson v. American Drug Stores, La.App., 175 So. 157. There, it appeared that the drug store entered into a written contract with one Matthews whereby he agreed to deliver the packages of the former on his own motorcycle for a consideration of a 1¢ commission on each and every package so delivered and, in addition thereto, he was to receive the sum of $15 per week for gasoline, repairs and other expenses attendant to the operation of his motorcycle. It was further provided that, in case Matthews should have an accident while delivering the packages for the drug store, he would assume full responsibility to the injured party. The plaintiff in the case, who had sued the American Drug Stores for Matthews' negligence, claimed that she was not bound by the written contract, wherein the parties had attempted to determine their legal relations to each other, and that, under the true facts, Matthews was the drug store's

employee. We sustained her contention. We further found that the contract was terminable at the will of either party and that this fact alone was enough to signify that the relationship of employer and employee existed. On that point, we observed:

"Finally, the contract is for no definite term and may be ended at any time by the American Drug Stores. The right to terminate a contract of employment at will is a strong indication that the relation created by the contract is that of master and servant.

"In 14 Ruling Case Law, p. 72, is found the following:

"'Power to Terminate Contract.—The power of an employer to terminate the employment at any time is incompatible with the full control of the work which is usually enjoyed by an independent contractor, and hence is considered as a strong circumstance tending to show subserviency of the employee. Indeed, it has been said that no single fact is more conclusive, perhaps, than the unrestricted right of an employer to end the particular service whenever he chooses, without regard to the final result of the work itself. On the other hand, the fact that the employer cannot terminate the employment strongly tends to show that the contractor is independent. The relation between the parties is, however, to be determined from all the surrounding indicia of control, and the sole circumstance that the employer has reserved the right to terminate the work and discharge the contractor does not necessarily make the contractor a mere servant. The contractor does not generally lose his independence because the contract empowers the employer to terminate the employment upon the happening of some contingency, such as a breach of the covenants of the contract. The courts do not make the right to discharge the employee the decisive test whether he is an independent contractor, but look to the broader question whether he was in fact independent or subject to the control of the person for whom the work is done, as to what should be done and how it should be done.'"

There is another circumstance connected with Ricketts' employment in the instant case which strengthens the holding that he was a servant of the defendant. It appears that the defendant gave its carriers special instructions respecting the methods to be used in distributing its newspaper and stimulating its sale. This fact suggests the exercise of supervision by it over the work of its salesmen and excludes the idea that the employees were free to use their own judgment concerning the mode to be adopted in the disposal of defendant's product.

Counsel for the defendant company, in stressing that we should conclude that Ricketts was an independent contractor, cites the cases of Turner v. Item Co., 6 La. App. 270, and Abate et al. v. Hirdes et al., 9 La.App. 688, 121 So. 775, 776, in support of the contention.

The facts of the first cited case are vastly different from those appearing here for, there, the Item Company had employed one Fox under a written contract for three months as the distributor of its newspaper and Fox had in turn employed a man named Berlin who was hauling the newspapers at the time of the accident. It is plain that, under the particular facts of that matter, Fox was nothing more than the purchaser of copies of the paper published by the defendant and that he, and not the defendant, employed Berlin to deliver his papers. The paper route of Berlin was not the route of the defendant company and it had nothing whatsoever to do with the resale and distribution of the product.

Counsel, however, relying heavily upon our decision in Abate v. Hirdes, supra, argues that the facts of that matter are indistinguishable from the facts now under discussion. There, it appeared that the Item Company employed Hirdes at a weekly salary of $20 as a distributor of its newspapers. For this purpose, he used his own truck and he paid all of the costs attendant to the operation of the same. He also used the machine in other hauling for his own account. The only requirements exacted by the Item Company were (1) that he deliver no other afternoon paper and (2) that he produce satisfactory results in the territory allotted to him. In commenting upon the relation between the parties, we observed:

"As long as he did this the company had no right to complain as to his method of driving the truck, as to the route taken by him in delivering his papers, as to who should help him in his work, as to whether he should drive the truck himself or em-

ploy some one else, or as to any other matters relating to the conduct of his particular end of the business."

We perceive a marked difference between the facts of the cited case and the evidence submitted in the instant matter. In the first place, it does not appear from the opinion in that case that the Item Company had the right to terminate Hirdes' employment at will, whereas, here, it is shown that the defendant company could discharge Ricketts at any time it saw fit without assigning a reason for doing so. There, it was proved that the Item Company had nothing whatsoever to do with the operation of the truck and that it did not pay or reimburse Hirdes for the expenses he incurred in running the same, whereas, here, it is shown that the defendant company paid Ricketts $5 per week to reimburse him for the expenses incurred in operating his automobile. Again, in the cited case, it was proved that Hirdes used the truck in a general hauling business, whereas, here, it is not intimated or suggested that Ricketts was engaged in any other business. Moreover, unlike in the case at bar, it was not shown in the Hirdes case that the Item Company was the owner of the route over which the agent operated or that he was given any instructions with respect to the increase of his sales or that he was required to post a bond for the faithful performance of his duties.

It is to be borne in mind that cases of this type must stand or fall upon their own particular facts and that each circumstance considered by the court, in formulating its opinion, may not of itself, if treated separately, be sufficient to indicate the true relationship of the parties. The correct result can only be reached by examining all of the surrounding circumstances as a whole and by deliberating upon whether they are such as to justify the specific ruling. By adopting this method, we have concluded that, under the facts of this case, Ricketts was not an independent contractor but was the employee of the defendant publishing company.

■ The defendant also suggests that, inasmuch as Ricketts was not delivering papers on his route at the time the accident occurred but was driving his car to the defendant's office for the purpose of attending a sales meeting, he was not acting within the course and scope of his employment. This thought is based upon the premise that Ricketts acted on his own volition in attending the meeting and that it was not a part of his duties to do so. But we find that it would be unreasonable to suppose that defendant did not expect Ricketts to be present at these meetings and it is our notion that, had he absented himself from them with frequence and without valid excuse, his employment would have been of short duration.

■ Being of the opinion that the defendant publishing company is liable to the plaintiff, we consider the extent of her injuries. The report of the Charity Hospital, where plaintiff was taken immediately following the accident, reveals that she was suffering with contusions of the left arm and elbow; a fracture of the left fibula and contusions of the left knee with possible separation of semi-lunar cartilages. She remained in the hospital for a period of 24 days. Since the accident, she has used crutches to assist her in walking. She was 59 years old at the time she was injured. Dr. John O. Redding, who examined her at the request of the Travelers Insurance Company almost a year after the accident, states that the only thing he could find wrong with her was a small lump on the outer side of her leg about midway between the knee and the ankle, which impressed him as being a callous formation of the fibula. Our brother below awarded plaintiff a judgment of $1,000 in her suit against Ricketts. We believe that that allowance is approximately correct and that an award in the same amount will fully compensate plaintiff for her hurts.

After this case was argued and submitted and while the matter was under advisement in this court, the plaintiff died. On March 9, 1939, her counsel filed a motion wherein it was suggested that, plaintiff's suit being for a quasi offense, her right of action has survived in favor of her sister, Mary Gallaher, by virtue of the provisions of Art. 2315 of the Civil Code as amended. It was further alleged in said motion that plaintiff was never married; that she had neither adopted a child nor children nor was she adopted by anyone; that her father and mother died before her and that her sister was the only relative entitled by law to prosecute the action. Upon this showing, we issued an ex parte order making Mary Gallaher a party plaintiff and appellant to the proceeding.

■ Counsel for the defendant publishing company, being duly advised of the issuance of the order hereinabove referred to, examined the facts of the matter with respect to the truth of the allegations contained in the motion to make parties plaintiff. He has advised us that, from the records in the matter of the Succession of Mrs. Mary Dermody, Widow of Patrick Gallaher, No. 216,018 and the Succession of Mrs. Mary Alice Gallaher, Widow of E. E. Carlin, No. 219,246 of the docket of the Civil District Court for the Parish of Orleans, it clearly appears that the only relative, within the beneficiaries named in Art. 2315 of the Civil Code, is Mary Gallaher, sister of the deceased plaintiff. In view of this fact, it would be useless to remand the matter to the district court for the purpose of taking evidence in order to determine that she is the proper party to prosecute this action.

■ We are also satisfied that the right of action has not abated and that, under Art. 2315, it has survived in favor of the substituted plaintiff. See Payne v. Georgetown Lumber Co., 117 La. 983, 42 So. 475, Thompson v. New Orleans Ry. & Light Co., 145 La. 805, 806, 83 So. 19, and Badie v. Columbia Brewing Co., 142 La. 853, 854, 77 So. 768. Compare Castelluccio et al. v. Cloverland Dairy Products Co., Inc., 165 La. 606, 115 So. 796, and Kerner v. Trans-Mississippi Terminal R. Co. et al., 158 La. 853, 104 So. 740.

For the reasons assigned, the judgment appealed from is reversed and it is now ordered, adjudged and decreed that there be judgment herein in favor of Miss Mary Gallaher and against the defendant Times-Picayune Publishing Company for the full sum of $1,000 with legal interest thereon from judicial demand until paid and for all costs.

Reversed.

JANVIER, Judge (dissenting).

I am unable to agree with the conclusion reached by my associates that Ricketts was not an independent contractor, but was an employee of defendant Times-Picayune Publishing Company.

In the first place, I find no reason to attach any sinister significance to the fact that the contract between Ricketts and the publishing company was not offered in evidence. There was not the slightest controversy or dispute concerning the terms of that contract. The only controversy arose over the legal effect to be given to those terms. Since there was no dispute over the terms and since the circulation manager of the publishing company testified concerning them, there was no necessity to offer in evidence the contract itself.

I quite agree that whether a contracting party is an employee, or an independent contractor, depends primarily upon whether there exists a right of control in the performance of the work. But that does not mean that the mere fact that the one advises the other as to the best method of performing the work makes the other the employee and deprives him of the legal right to perform his contract work as he sees fit.

I have expressed my views fully in Abate et al. v. Hirdes, et al., 9 La.App. 688, 121 So. 775, which I think cannot be distinguished from the case at bar. My associates would distinguish that case in several particulars. First, they believe that there is a difference in legal effect between the payment in this case of $5 a week to reimburse Ricketts the cost of operating his automobile and the payment in the Abate case of $20 per month without any stipulation that it was to be considered as reimbursement for the cost of operating the motor truck. I cannot see the slightest difference in legal effect.

It is also said that the cases can be distinguished because, in Abate v. Hirdes, supra, Hirdes used his automobile for other purposes of his own. Here the automobile is shown to be the personal property of Ricketts; the publishing company did not buy it, made him no loan on it, and had no contact or connection with it, and it therefore requires no evidence to show that Ricketts may use it for any other purpose of his own whenever he wishes to do so.

It is shown here that the company could terminate the contract at any time it might see fit to do so, if it was not satisfied with the work of Ricketts, and that fact, it is true, was not shown in the Abate case, and I concede that the right to terminate a contract at will is sometimes significant in determining whether the contract is one of employment. But it is not the determining factor, and the evidence here is to the effect that there was no right to control the movements of Ricketts and that, in fact, no control was exercised. The evidence shows, without one

word of contradiction, that Ricketts bought his papers from the publishing company at a fixed price and that his earning was the difference between that price and the price at which he sold them to the subscribers.

My associates find a distinction in the fact that here the record shows conclusively that the route belonged to the publishing company, whereas the opinion in the Abate case may have omitted making that statement. But the opinion shows clearly that, in fact, the route did belong to the publishing company which was involved, because it states that it assigned that route to Hirdes and made him a contribution because it knew that, in that particular territory, the business would not be sufficient to make him a fair return.

The evidence shows also, without any contradiction, that, though the publishing company collected such money as might be paid to it by the subscribers, it turned over to Ricketts the difference between what he owed them for the papers and what the subscribers paid, and it shows, also, that, if Ricketts continued to deliver papers to the subscribers whose subscriptions had terminated, he must pay the publishing company for those additional papers. In fact, the record contains no evidence whatever to contradict the statements of the general circulation manager and of the city circulation manager to the effect that it neither had nor exercised any control whatever over the movements of Ricketts except that it did furnish instruction, information and advice as to the best method of conducting his business.

I see nothing in this case which makes it similar to Davidson v. American Drug Stores, La.App., 175 So. 157. There we held squarely that the so-called independent contract was a sham and a subterfuge and was entered into solely for the purpose of preventing the defendant from being liable in tort. Surely there is nothing in this record which justifies the conclusion that that purpose existed here.

For these reasons, I respectfully dissent.