### GALLAHER v. RICKETTS et al.
#### No. 17003.

Court of Appeal of Louisiana. Orleans.
Oct. 30, 1939.

For original decree, see 187 So. 351.

Benjamin Y. Wolf, of New Orleans, for appellant.

John May and Spencer, Phelps, Dunbar & Marks, all of New Orleans, for appellee Times-Picayune Pub. Co.

Deutsch and Kerrigan, of New Orleans, amici curiae.

JANVIER, Judge.

The facts of this case are correctly and completely set forth in our original opinion. See 187 So. 351. The majority of this court found that the minor, Ricketts, a newspaper deliverer, whose negligence caused plaintiff's injuries, was an employee of defendant, Times-Picayune Publishing Company, and not an independent contractor; that he was required to attend the "pep" meetings which, from time to time, were held at the office of the publishing company; that his said employer allowed him $5 per week on account of the expense of operating his own automobile in the delivery of newspapers published by the said company, and concluded, from these facts, that, in using his automobile in going to and from the "pep" meeting on the morning of July 30, 1936, Ricketts was acting within the scope of his employment by the publishing company, and, consequently, that it was liable for the result of his negligent act.

When we considered defendant's application for rehearing, our attention, for the first time, was focused upon the fact that, though defendant allowed to Ricketts $5 per week to assist him in defraying the expense of operating his (Ricketts') automobile, the use of the said automobile, so far as the said publishing company was concerned or involved, was limited to the delivery of the said newspapers, and that the said publishing company, even conceding that it required Ricketts to attend "pep" meetings, had no concern with the means of transportation employed by him in attending those meetings. Defendant, calling attention to these facts, maintains that, in going to and from these "pep" meetings, Ricketts was not acting within the scope of his employment and that it is not responsible for his use of his automobile on those occasions. It was solely for the purpose of considering this contention that we granted a rehearing.

Defendant shows that it contracts with, or, as the majority opinion prefers, "employs" numerous carriers, who undertake to deliver its newspapers to subscribers, and that among these carriers are some whose allotted territory is so extensive, or whose routes are so long, that they cannot profitably serve their subscribers without automobiles, and that in these cases the carriers who own and use automobiles are paid a fixed amount each week to be used in defraying, wholly or partially, the cost of operating them.

Defendant concedes, arguendo, that if the said carriers are employees and if the contract of employment contemplates that automobiles, the expense of which is wholly or partially paid by defendant, are used in such deliveries, then negligent acts of such carriers in operating such automobiles in making such deliveries render defendant liable.

But defendant maintains that, even so conceding, its liability should be limited to the results of acts committed during the making of such deliveries and should not be extended to include responsibility for other acts of the said carriers committed, not while making deliveries, but while using such automobiles purely and solely for the convenience of the owners, and contends that, in going to and from these "pep" meetings, these carriers use their automobiles for their own convenience and that it, defendant, has no concern with such use.

It thus appears that the contention to which we have now limited this controversy is confined within very close borders and we first direct our attention to the particular facts on which this very limited contention is based.

Defendant shows, without contradiction, that it has no knowledge whatever concerning the means of conveyance used by its various carriers in going to and from its "pep" meetings.

The record shows, without any contradiction, that the officials and employees of defendant, with the sole exception of Ricketts himself, had no knowledge whatever as to the means of transportation employed by Ricketts in going to and from these meetings. That defendant had no such knowledge is stated by Ricketts, who, in refer-

ring to the said publishing company, said: "They didn't know how I came."

Mr. Coleman, the circulation manager of defendant corporation, with reference to the means of transportation employed by Ricketts on these occasions, said: "I didn't know how he got there".

Mr. Flynn, the city circulation manager and assistant to Mr. Coleman, said that he did not designate any particular means of transportation and did not know what method was employed by the carrier.

The record further shows—again without contradiction—that in coming to the particular "pep" meeting of July 30th Ricketts had no other purpose than to attend the meeting. He was not coming for papers. See Coleman's testimony, transcript, page 5. And Mr. Flynn testified that Ricketts was not required to come to the office of the publishing company in order to get his papers; that they were all delivered to him at the nearest sub-station and that at that point he picked them up in his own automobile for delivery to his customers or subscribers. Flynn's statement on this point is: "He is supplied the papers through the sub-station nearest his route".

It thus appears that, insofar as the delivery of papers was concerned, Ricketts was not required to go to the main office of defendant company to carry out the work contemplated by his contract and that the only business matter which ever required his presence at the home office was attendance upon "pep" meetings.

It is obvious that the defendant corporation had no interest whatever in the means of transportation employed by him in going to these meetings, for it is very evident from the record that a great majority of the carriers do not have automobiles and use other means of conveyance.

■ It is well settled that, as a general rule, an employee, in going to and from his place of employment, is not considered as acting within the scope of his employment to such an extent as to render his employer liable to third persons for his negligent acts. We considered this question thoroughly in Cado et al. v. Many, 180 So. 185, and reached the conclusion that it is only where the trip to or from work is required by the master to be made in an automobile, or other vehicle furnished, or where the use of the vehicle may be regarded as for the owner's purposes, as where it makes it possible for the employee to arrive more quickly at the place of business, that the master, under those special circumstances, may be liable. The rule is stated, also, in Berry's Law of Automobiles, 7th Edition, Vol. IV, page 649, in Corpus Juris, Vol. 42, Sec. 868, page 1108, and in 5 Blashfield's Cyclopedia of Automobile Law & Practice, Permanent Edition, § 3042.

Counsel for plaintiff calls attention to numerous cases which he contends are authority for the contrary view. But we have no difficulty in seeing the distinction between all of those cases, most of them having arisen as the result of suits for compensation, where the employee himself was injured. That there is a different rule in such cases is well established.

In Marquez v. Le Blanc, La.App., 143 So. 108, 112, we said:

"* * * The main reason for a lack of satisfactory consistency in the jurisprudence on this subject comes from the fact that in compensation cases the courts have adopted a liberal construction in favor of the claimant where the defense was that the relation of employer and employee did not exist between the parties due to the fact that the claimant was working for an independent contractor. But in actions ex delicto for personal injuries and damages the courts apparently have adopted a strict interpretation and construction of the rule of respondeat superior. This situation is apparent from a reading of several compensation cases, including James v. Hillyer-Deutsch-Edwards, 15 La.App. 71, 130 So. 257; Burt v. Davis-Wood Lumber Co., 157 La. 111, 102 So. 87; Helton v. Tall Timber Lumber Co., 148 La. 180, 86 So. 729; Bell v. Albert Hanson Lumber Co., Ltd., 151 La. 824, 92 So. 350; Dick v. Gravel Logging Co., Inc., 152 La. 993, 95 So. 99; and Odom v. Lutcher & Moore Lumber Co., 7 La.App. 458.

"In contrast to these decisions we have the opinions in certain damage suits, examples of which are Moffet v. Koch, 106 La. 371, 375, 31 So. 40; Robideaux v. Hebert, et al., 118 La. [1089] 1090, 1095, 43 So. 887, 12 L.R.A.(N.S.) 632; Abate, et al. v. Hirdes, et al., 9 La.App. 688, 121 So. 775; Shea v. Reems, 36 La.Ann. 966.

"Under these circumstances we feel that we are compelled to follow the decisions with reference to the damage suits, rather than the compensation cases."

■ We conclude that Ricketts, in driving his own automobile to the place of business of his employer under the circumstances shown here, was not acting within the scope of his employment. If he was so acting, then every employee in going to work should also be held to be acting within the scope of his employment. And we see no reason to conclude that, because here an allowance was made for the use of the car in delivering papers, the. master should be held liable for the negligent operation of that car on other occasions.

The facts of this case are remarkably similar to those found in Davis v. Pitt Publishing Company, 324 Pa. 449, 188 A. 291, 292. There a publishing company paid to a carrier "$15 a week to defray the 'expenses for the operation of (his) car.'" The employee, in addition to delivering papers, was required, on occasions, to attend "pep" meetings at the office of the publishing company. While he was on his way to one of these meetings in his own automobile, he struck and injured the plaintiff. Suit was brought against his employer, the publishing company, and the court held that, although the company paid him a fixed amount to be used in defraying the expenses of the operation of his own automobile, the said automobile was not being used in the delivery of papers at the time, and that, therefore, the said employee, in going to the "pep" meeting, could not have been said to have been acting within the scope of his employment. The court said: "The car was his and not defendant's. It was not being used in and about the defendant's business at the time. There is nothing to indicate that defendant had, or exercised, any control whatever either over Jardine or over the car at the time. Jardine was then his own master. In such circumstances, defendant is not responsible for Jardine's negligence."

Counsel for plaintiff calls to our attention Duffy et ux. v. Hickey, 151 La. 274, 91 So. 733, in which it was held that the master was liable for the negligent operation by an employee of an automobile belonging to the master, though the employee was on his way to his home for a meal at the time of the accident. But that case is not in point for the reason that, though the master had directed the employee not to use the automobile in going home for meals, the court found that under the particular circumstances of the case, the employee may have been justified in believing that the master would have approved his using the automobile for that purpose on that occasion. He was so very near to his home that he thought it the best thing to do. That case, then, falls within that group of cases which has established the doctrine that, if the vehicle is being used in the furtherance of the business of the employer for the reason that it enables the employee to reach the place of business more quickly, the master may be liable.

Nor do we consider Calamia v. Mayer et al., La.App., 174 So. 668, analogous. There a group of brothers who owned and operated a manufacturing company. lived together and, among them, supported their mother at their home. The employee involved in the accident from which the case arose worked sometimes at their private residence and sometimes in the mill. He was directed on the occasion in question to leave the mill, proceed to the residence, and bring back the mother that she might take lunch with her sons. He used his own automobile to go to the residence, intending to leave his automobile there and to bring the mother back in the automobile belonging to the sons. While going for the mother in his own car the accident occurred. But, in going for the mother, he was performing an errand which he was instructed to perform by the defendants, and, in performing that errand, he was acting within the scope of his employment.

We think that it may be said that there were two parts to the work which Ricketts was employed to perform. The first and most important was the delivery of papers. In this part of his work defendant was interested in having him use his automobile. It paid a part of the expense of operation and made itself liable for any negligence of which he might be guilty while so delivering papers. The other part of his job was to attend meetings along with all other carriers. Defendant had no concern with his use of his automobile in attending those meetings. It is not liable for his acts of negligence committed while going to and from those meetings. So far as defendant was concerned, the automobile was identified solely with the delivery of its newspapers.

Accordingly, our original decree is recalled and annulled, and it is now ordered,

adjudged and decreed that the judgment appealed from be and it is affirmed, and, accordingly, that plaintiff's suit be and it is dismissed.

Original decree recalled; judgment of trial court affirmed.