JANVIER, Judge.
There is little disagreement over the -facts which gave rise to this suit for damages for personal injuries. James La-Borde, the plaintiff, sustained physical injuries when the truck which he was driving was run into from the rear, while it was standing stationary, by a tractor and trailer ■combination, which we shall hereinafter refer to as a truck, owned by Alvin McBride, and at the time was being operated by Wilmer Thompson who at times was an ■employee of Edward M. Stone and Son, a partnership which conducted its import-export business under the trade name of Bob Stone Cordage Company and which partnership we shall hereafter refer to as “Stone.”
Stone had secured from The Ti-avelers Indemnity Company, hereinafter referred to as The Travelers, a policy of liability insurance, which it is conceded was applicable where there was involved a piece of motor equipment belonging to Stone, or a piece of non-owned motor equipment if operated in the interest and business of Stone.
LaBorde brought suit against McBride and The Travelers, alleging that the accident had resulted solely from negligence of Thompson and that at the time Thompson was acting as the agent of Stone. He prayed for solidary judgment in the sum of $6,523.50. McBride did not answer, though he did appear in person as a witness at the trial in the District Court.
The Travelers answered, denying most of the allegations for lack of information, but in effect admitting the occurrence of the accident and averring that Thompson had not been at fault; that the cause of the accident was fault on the part of La-Borde himself in bringing his truck to too sudden a stop as a result of the “slamming on” of the brakes of the truck.
The real defense urged by The Travelers is the contention that at the time of the occurrence Thompson was not the agent of Stone and was not acting within the scope and course of his employment by Stone.
There was judgment in favor of La-Borde against McBride in the sum of $3,000 and dismissing the suit of LaBorde against The Travelers. McBride has not appealed, but LaBorde has appealed devolutively insofar as the judgment dismisses his suit against The Travelers.
The record leaves no doubt at all as to the negligence of Thompson. In fact, in their brief counsel for The Travelers state that “There is no valid defense on the merits of the case,” and since McBride has not appealed, if it should be determined that Thompson was acting within the course and scope of his employment as an employee of Stone, and was operating the McBride truck in Stone’s interest, there would be liability in The Travelers as the liability insurer of Stone. We say this because counsel for The Travelers has stipulated that the policy of that company is applicable not only where there is involved a motor vehicle of Stone, but also where the vehicle which is involved, though not owned by Stone, is being operated in the interest of Stone.
Stone imports large quantities of cordage, barbed wire and other such materials and, by independent truck lines, ships these goods to customers in various states, particularly in the south. The truckmen or draymen who are employed by Stone are paid on a weight and distance basis, that is, they receive a certain amount per ton, which amount varies in accordance with the distance to be traveled by each truck employed. The loading of materials at the several riverfront wharves in New Orleans is done by employees who do not work regularly for any one employer but who, among other such groups on the riverfront, are looking for employment by anyone who may require such labor.
*321 Thompson, prior to the accident and on some occasions since, was employed by Stone, along with other similar employees, to load various trucks of independent contractor truckmen and these employees, including Thompson, were paid by Stone for the loading of the trucks.
The record indicates that each gang of loaders employed by Stone was paid a fixed amount for the loading of each truck and that that amount, whatever it was, was “split down the middle” among the various employees hired for that particular job. The record also indicates that the gang loading each truck might consist of three, four, five or six employees. As stated, these men did not regularly work for any one shipper or importer but changed employment according to the needs of the employers and as each particular job would be completed, though the record does show that Thompson frequently worked for Stone and unquestionably was employed by Stone as a loader on that particular day.
McBride owned one piece of equipment, and, having solicited hauling business from Stone, had been employed to haul that load to a point in northern Mississippi. There is some conflict over the question of whether that was the first load which McBride had ever hauled for Stone, or whether it was the third load, but there is no doubt that McBride had been employed by Stone certainly not more often than on two previous occasions.
The load which was to be placed on that truck of McBride was located on two different wharves at the riverfront, which made it necessary that the McBride truck be partially loaded at the first location and be then moved to another wharf some distance away. McBride himself was the driver of his own truck and he placed it at the first location for loading. During the late afternoon all of the Stone material at the first location had been placed on the truck and it became necessary that the truck be moved to the second location.
McBride had personal business to attend to in the business section of the city and he left the truck, not knowing whether he would return in time to move it himself after the completion of the loading at the first location. Thompson says that when McBride left, McBride asked him to move the truck should it become necessary before he, McBride, should return. McBride says that he did not ask Thompson to move the truck but he would not have objected to his moving it. Thompson was not a truck driver and did not have the necessary driver’s license.
Joseph A. Parra, the local manager of the Stone partnership, said that at no time did Thompson operate trucks of Stone, though Stone itself owned two pick-up trucks and used them in hauling some of its materials or products within the City of New Orleans.
The record does not show with certainty whether or not in moving the truck from the first location towards the second Thompson transported any of the other employees of Stone. It seems that, in such situations, if the employees who had completed the loading at the first location were required to go to the second, sometimes they were transported on the truck of the truckmen who were to haul the goods to final destination, but that whether they were or not depended on whether the truckman was willing to carry them. It seems that sometimes they rode on trucks of the Stone company and sometimes they found other means of transportation. They were not paid by Stone for the time which elapsed between the completion of the loading at the first location and the commencement of the loading at the second. When, in such cases, the men were moved from one location to the other, Mr. Parra, the general manager of Stone, was asked: “Who transports the men from one wharf to the other?” He said: “They generally ride with the truck that they were loading, or we pick them up with our own truck.” When asked whether, on that particular day, the loaders had been transported in *322 the truck which was involved in the accident, Parra answered: “They evidently did, yes.” We direct attention to the use of the word “evidently” and we note that Mr. Parra was not present either when the truck left the first location nor at the time of the accident, and therefore could not be certain that any of the loaders were on the truck of McBride. On the other hand, Thompson, who was actually driving the truck, said that none of the loaders was riding on it and that, while one other man was on it, that man was not a loader but was merely a bystander who had asked that he be given transportation.
Under the circumstances the question of whether Thompson was moving the truck in the course of and within the scope of his employment by Stone is a very interesting one. It is true that Stone to some extent was interested in having the moving completed with reasonable celerity. Stone was required to pay demurrage for the use of the wharf, but this demurrage was paid by the day and it was obvious that in any event the entire loading, both at the first location and at the second, would be completed during that day.
On the other hand, McBride was to leave to drive the truck load to northern Mississippi as soon as the loading could be completed, and he was therefore interested in having the loading completed as soon as possible so that he might leave that night as he contemplated doing. Thompson, who actually drove the truck, was also interested in getting to the second location so that he might again commence loading and commence the earning of additional wages. We conclude that, under all the circumstances, both McBride and Thompson were much more interested in having the loading completed speedily than was Stone.
Counsel for the plaintiff-appellant maintain that, although Thompson was not regularly employed by Stone, and although he had never been employed as a truck driver, the movement of the truck undertaken by him was in the interest of Stone and that therefore in driving it he was not only acting as an employee of Stone, but was acting within the course and scope of his employment. And counsel point to many cases, most of which involve workmen’s compensation, in which it has been held that, where the employee performs an act which redounds to the benefit of the employer, or which the employer might expect him to perform, there is liability in compensation even though the act done was not within the regularly contemplated scope of employment of the employee.
We find it well settled that the very liberal construction given to the term “course and scope of employment,” which is to be found in various workmen’s compensation cases, is not accorded to the same term where there is involved a question of liability in tort. We discussed ‘this at considerable length in Gallaher v. Ricketts, La.App., 191 So. 713, 715, and, having discussed various cases in which compensation was awarded to an injured employee, we said:
“ * * * we have no difficulty in seeing the distinction between all of those cases, most of them having arisen as the result of suits for compensation, where the employee himself was injured. That there is a different rule in such cases is well established.”
We cited Marquez v. Le Blanc, La.App., 143 So. 108, 112, in which we said:
“ * * * The main reason for a lack of satisfactory consistency in the jurisprudence on this subject comes from the fact that in compensation cases the courts have adopted a liberal construction in favor of the claimant where the defense was that the relation of employer and employee did not exist between the parties due to the fact that the claimant was working for an independent contractor. But in actions ex delicto for personal injuries and damages the courts apparently have adopted a strict interpretation and *323 construction of the rule of respondeat superior. This situation is apparent from a reading of several compensation cases, including James v. Hillyer-Deutsch-Edwards, 15 La.App. 71, 130 So. 257; Burt v. Davis-Wood Lumber Co., 157 La. 111, 102 So. 87; Helton v. Tall Timber Lumber Co., 148 La. 180, 86 So. 729; Bell v. Albert Hanson Lumber Co., Ltd., 151 La. 824, 92 So. 350; Dick v. Gravel Logging Co., Inc., 152 La. 993, 95 So. 99; and Odom v. Lutcher & Moore Lumber Co., 7 La.App. 458.”
Then, citing decisions in tort liability cases, we said:
“ * * * we feel that we are compelled to follow the decisions with reference to the damage suits, rather than the compensation cases.”
There are certain facts here which we think require this result even more certainly than might be required in the case of a regularly employed employee. The facts are that Thompson was not an employee of Stone employed by the day or the month or the year, but was merely one of a large number of riverfront employees who are engaged when necessary by any shippers or importers who may require the services of such employees. Thompson had never driven a truck for Stone. Stone did not know that he was operating the truck, had no control over his movements, and in fact had nothing whatever, to do with what Thompson did except to pay him for the work he did at the first location and the work which he would have done at the second had he arrived there safely.
Counsel for plaintiff-appellant, with much confidence, directs our attention to a decision of the Court of Appeal for the First Circuit in Travelers Fire Ins. Co. v. Savoy, La.App., 82 So.2d 68, 69. There, in the sugar cane growing area of Louisiana, it was customary for sugar cane farmers in the area “to help each other with the harvesting of cane crops whenever one of them got behind in harvesting.” The defendant, Savoy, “was behind in his harvesting,” and the owners of a tractor sent the tractor to help in the harvesting of Savoy’s crop. Percy J. Sanchez, one of the owners of the tractor, drove it to the farm of the defendant and apparently operated it for awhile. Then, finding it necessary to obtain another operator, he called an employee of Savoy and asked him to drive the tractor in the interest of harvesting Savoy’s crop. This other employee, Alvin Legleu, operated the tractor negligently and an accident occurred.
It was contended that Savoy was liable for the reason that Legleu, in operating the tractor, was an employee of his and was operating it within the course and scope of his employment. The situation there was substantially different from that found here for, although it appears that the defendant, Savoy, was not present and did not know that Legleu was operating the Ford tractor for him, Legleu seems to have been a regular employee of the defendant and was unquestionably operating the tractor for the purpose of helping the defendant get his sugar cane crop to the mill which “was about to close down in a few days.”
It was not an independent contractor who had sent the tractor to work and who may himself have been interested in having the tractor operated. The tractor was loaned to Savoy and an employee of Savoy’s was operating it. We quite agree that, under those circumstances, the employee was acting within the scope of his employment by Savoy. That cannot be said here.
We think that it cannot be said that in operating McBride’s truck under the circumstances shown, Thompson, employed intermittently by Stone as a loader, can be said to have been operating the truck of McBride within the scope of his employment by Stone.
The judgment appealed from is affirmed at the cost of appellant.
Affirmed.