JESSE C. McGEE, Judge ad hoc.
The plaintiffs, Grain Dealers Mutual Insurance Company, subrogee of its assured, Raymond R. Centanni, and the assured brought this suit against the defendants for damages to a 1957 Chevrolet automobile, belonging to the assured Centanni, as a result of a collision between the automobile and a railroad train owned and operated by the defendants, The Texas and Pacific Railway Company and/or Texas Pacific Missouri Pacific Terminal Railway of New Orleans. The Insurance Company alleging that it had paid to its assured the sum of $1,578.00 and Centanni sues for the sum of $50.00 representing the deductible portion of the collision insurance contract.
The defendants entered a general denial of plaintiff’s petition and in reconvention they are seeking to recover from the plaintiffs the sum of $186.50 representing damages to the locomotive in the amount of *343 $76.48 and damages to the switch stand in the sum of $110.02.
The accident occurred on January 28, 1959, about 10:30 A.M-. on a bright and sunny day.
After trial judgment was rendered dismissing plaintiff’s suit at their costs and also dismissing the reconventional demands of the defendants at its costs.
The record shows that a locomotive belonging to the defendant was pulling a string of sixteen cars in a “back-up position” proceeding in a direction toward Gretna from Harvey at a speed of 15-18 m. p. h., when the accident occurred at the intersection of the railroad tracks with Brown’s Lane. There are four sets of tracks at this point, two of the tracks being Southern Pacific and two of the tracks being Texas Pacific. The defendant’s tracks were those nearest the river and the accident occurred on the second tracks from the river.
The Chevrolet automobile owned by Cen-tanni and driven by Lawrence Boise was proceeding from the Mississippi River on Brown’s Lane toward Fourth Street with the train approaching from his right.
The engineer on the locomotive, Mr. W. P. Kerney, testified that he was about 30 feet from the crossing when he saw the driver coming up to the crossing and it looked like he was going to make a stop; he further testified that he had blown his crossing signal and the bell was ringing all the way from Plarvey Bridge and that the automatic bell was on; the engineer further stated that he figured Boise was going to stop but instead of stopping he tried to beat him over. (Tr. 55)
Lawrence Boise, the driver of thé automobile, stated that he had been following Raymond Centanni who was proceeding ahead in a truck and who had instructed Boise to follow him. Both Boise and Cen-tanni testified that they did not see or hear the train.
Emile Joseph Bush, Jr., a milk truck driver who had just delivered milk to a restaurant, testified that he had just come out of the restaurant when his attention was drawn by the sound of the train coming and speeding; that as he looked up he saw the train strike the rear end of the automobile and that he ran across the highway to draw the attention of the engine to the fact that they had struck and were dragging the car along. (Tr. 57-58)
A Mr. Ross Rousso testified that he was on top of his building cleaning a water tower when he saw the accident after the impact of the train with the automobile, and that the train went about 200 feet before it stopped. He further stated that he heard no whistle or bell but he did hear the rattling of box cars; that from the roof top where he was standing to the point of impact was about 200 feet. (Tr. 86-87-89)
Mr. Raymond R. Centanni, one of the plaintiffs here, testified that he runs a linesman service and their work being the tying up of ships along the river front. He stated that on the morning of the accident he was ahead of the Chevrolet automobile about 50 or 60 feet, driving a Chevrolet pick-up truck and was proceeding along Brown’s Lane to the railroad tracks where he saw a few box cars on the tracks on the right hand side not too far from the crossing; that he crossed the tracks at a Speed of 10-12 miles per hour; that he had hardly made it across the tracks when he heard the impact of the collision between the engine and the automobile and looked through his rear view mirror and saw the car going down the railroad hooked underneath the front step of the locomotive; that he jumped out of his truck to and try to help the boy; that he and a railroad detective stepped off the distance from the point of impact to where the train stopped and it was a distance of about 400 feet, and the witness further stated that he did not hear a thing until the train hit the car. (Tr. 117-119-120) The witness further testified with reference to his employment of Boise. He stated that Boise does odd jobs for everybody in the neighborhood; that he asked him to shine his car *344 and that Boise agreed and they agreed upon a price of $8.00; the witness told Boise that he would have to have , some transportation and that it would be necessary to go and get the company truck; that he went over to what they call the Fleet, across the tracks, (which he crossed several times a day) and got the truck and left the car running with Boise after turning the car around for him (Boise) and told him to follow me in the Chevrolet on home where he was to shine my car; that he (Boise) followed and upon reaching the tracks, Boise was some 50 or 60 feet behind; that the witness was going 10 to 12 m. p. h. while crossing the tracks. On cross examination the witness stated that he did not stop for the railroad crossing although he knew there was stop sign there. (Tr. 121— 123) The witness stated that he was about 30 feet from the point of the impact but that at no time did he see the train approaching, nor did he hear noises, bells, whistles, or other warnings of a train approaching. (Tr. 127)
The court in its judgment stated that it had inspected the crossing and surrounding area and with this in mind the court must give weight and sufficiency to the evidence as follows:
(1) It was not established that the train was proceeding at an excessive rate of speed;
(2) It was not established that the train was not under control;
(3) The witnesses Bush, Rousso, Cen-tanni and Boyd (Boise) all testified they did not hear a whistle or bell. To the contrary was the testimony of the train crew; the train crew must be classed as parties in interest and that the court must give weight and credence to Bush and Rousso, two disinterested persons who were in position to know whether or not a whistle or a bell was sounded and accordingly the court found that the railroad failed to comply with LSA-R.S. 45:561, and that violation of this section is negligence per se: Smith v. T. & P. Ry. Co., 189 So. 316; Robertson v. Missouri P. R. Co., La.App., 167 So. 165.
The court further found that the-crossing is an open clean crossing with clear view of the tracks in either direction: for several hundred yards. The morning was sunny and clear. A motorist must see-that which may be seen and hear that which: may be heard. Matthews v. N. O. Term. Co., La.App., 45 So.2d 547.
The court further stated that in applying these rules the court must find the driver negligent because even if the box cars were on the first tracks, which fact was not sufficiently established, it merely placed upon: him the duty to take greater precautions before going onto the second track. Schutte v. Louisiana Ry. & Nav. Co., 10 La.App., 93, 120 So. 266.
The court found the driver of the automobile to have violated both LSA-R.S. 45 :- 563 and LSA-R.S. 32:243 in not stopping at the crossing and also negligent, and dismissed plaintiffs’ suit and rejected the demands of the defendant in reconvention.
The appellants, in oral argument and in-brief, assign as their specification or error the imputation by the court of the negligence of Boise to Centanni; it is contended that the owner of an automobile may recover even though the negligence of its operator contributed to the accident in the absence of proof of an agency relationship; they point out that an independent contractor’s negligence in the operation of an automobile of another is not imputed to its owner. The appellants further state the rule to be that if the owner has specified the results only, and the other party is left to his election as to the means and methods, he is an independent contractor and not an employee. The appellants view this case as almost a duplicate of Pugh v. Henritzy, Court of Appeal, Orleans, 1933, 151 So. 669. In that case the plaintiff arranged with Johnson, the repairman, that he would have his wife drive his automobile to the repair shop and that Johnson would drive her *345 Lack home, make the repairs for $7.50 and deliver the automobile when the job was done. The court held in that case that Johnson was an independent contractor and that the pick-up and delivery of the automobile was part of the job for which he was paid.
But here we have Boise in the Chevrolet, with Centanni driving to the river and Centanni picking up a track and instructing Boise to follow him to his home where the work was to be performed. Boise had no shop or place of business and, although, he had made a flat price of $8.00 to shine the car it certainly does not appear that the price included or had anything to do with the going with Mr. Centanni for the truck and driving the automobile, at his command to “follow me” home, was anything more than an accommodation to the plaintiff Cen-tanni by Boise.
While the record does not describe the work of shining a car, it would appear that it consists of cleaning the surface, applying 'the wax or polish and buffing the same to give the surface a glossy appearance, all being manual labor with simple aids such .as brushes, rags and polish or wax. The record does not disclose who was to furnish the brushes, rag and polish but as the work was to be performed at plaintiff’s residence he no doubt was to furnish the same.
Appellants contend that this shining service was to be done without any control or supervision by Mr. Centanni as he, Mr. Centanni, was to be out and about his work while Boise was doing the shine work on the car.
In Allgood v. Loeb, La.App., 22 So.2d 568, 571, a tort action by plaintiff allegedly as an independent contractor, but defendant contending that the action should be one for workmen’s compensation under Employers’ Liability Act, Act 20 of 1914, as amended, the court stated the test of the relationship to be,
“As we have above stated, the true test of the relation between the parties is founded upon the right of the employer to supervise and control the movements of the employee. Whether the employer actually exercises control or supervision is of no moment. The important question is whether, from the nature of the relationship, he had the right to do so. On the other hand, the term ‘independent contractor’ connotes a freedom of action and choice in respect of the undertaking and a legal responsibility on the part of the contractor in case the agreement is not fulfilled in accordance with its covenants.” Gallaher v. Ricketts, La.App., 187 So. 351, 355.
In view of the foregoing the court is of the opinion that Boise was the employee or servant of Centanni, under his direction from the time he turned the driving of the automobile over to Boise and directed him to follow him to his home.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.