742 F.2d 883
 Doris Bray ARMSTRONG, Individually, as Administratrix of the
estate of Larry Armstrong and as tutrix of her
minor children, Kenneth Douglas
Armstrong and Sharon Ann
Armstrong,
Plaintiffs-
Appellants,
v.
FARM EQUIPMENT COMPANY and the Hartford Insurance Company,
Defendants-Appellees.
 No. 83-3513.
 United States Court of Appeals,
Fifth Circuit.
 Oct. 1, 1984.
 
 Chaffe, McCall, Phillips, Toler & Sarpy, Kenneth W. Jacques, Kenneth J. Servay, New Orleans, La., for plaintiffs-appellants.
 Daniel A. Webb, Michael J. Navitsky, New Orleans, La., for Farm equipment co.
 Appeal from the United States District Court for the Eastern District of Louisiana.
 Before REAVLEY, JOHNSON, and JOLLY, Circuit Judges.
 JOHNSON, Circuit Judge:
 
 
 1
 On December 6, 1980, Larry Armstrong, a thirty-five year old resident of Jones, Louisiana, was crushed to death when the tractor he and his farm hands were jump starting leaped into gear and pinned him against his pickup. The decedent's wife, Doris Armstrong, filed this diversity action on her own behalf and on the behalf of the decedent's minor children, Kenneth and Sharon, alleging survival and wrongful death causes of action against Farm Equipment Company, seller of the tractor, Deere & Company manufacturer of the tractor, and their respective insurers. Plaintiff settled with Deere & Company prior to trial but proceeded to a jury verdict against Farm Equipment Company. In response to special interrogatories, the jury found Farm Equipment negligent and assessed its fault at fifty percent and, further, found the decedent and his farm hands negligent and assessed their combined fault at fifty percent. The jury assessed damages at $50,000 for the decedent's survival cause of action, $100,000 to each of the surviving children for their wrongful death causes of action, and $300,000 for the widow's wrongful death recovery, for a total damage award of $550,000. However, over plaintiff's objection, the trial court reduced the survival and wrongful death recoveries by fifty percent due to the decedent's and his farm hands' combined negligence and rendered judgment in favor of the plaintiff in an amount totalling $275,000. Plaintiff appeals to this Court alleging that the trial court erred by allowing the jury to impute the decedent's employees' negligence to the decedent and that the trial court erred by reducing the surviving widow's and children's wrongful death recoveries in proportion to the decedent's and farm hands' combined negligence. This Court affirms the district court's judgment.
 
 I. FACTS AND COURSE OF PROCEEDINGS
 
 2
 The Armstrongs own a north Louisiana farm consisting of approximately 375 acres. In addition to the Armstrong's farm, the decedent, Larry Armstrong, leased additional farm land, which brought the total acreage of his farm in 1980 to over 1,000 acres. As part of his farming operations, decedent employed several farm hands, including two brothers, Dennis and L.C. Martin.
 
 
 3
 Armstrong purchased the used John Deere tractor that caused his death in April 1977 from defendant, Farm Equipment. However, Armstrong did not operate the tractor himself, leaving the day-to-day farming activities to his farm hands. This left Armstrong free to tend to the administrative functions of the farm.
 
 
 4
 The testimony of L.C. Martin, decedent's employee, indicated that from the time the tractor was delivered to Mr. Armstrong's farm, it would start in gear since the neutral "out-off" switch had been rendered inoperative prior to the tractor's delivery. Although L.C. Martin was aware of this defect, he did not inform Mr. Armstrong since, in his opinion, there was no need to bother Mr. Armstrong as he never operated the tractor. While L.C. Martin was operating the tractor in May or June 1980, an axle broke and damaged the rear gear box and gear shift linkage. Farm Equipment was called to pick up and repair the tractor and, several days later when the tractor was repaired, Farm Equipment redelivered the tractor to the Armstrong farm.
 
 
 5
 After the repair of the axle linkage, however, the tractor allegedly did not shift properly; it occasionally would jump into gear from the neutral position and was hard to shift. L.C. Martin testified that while the tractor was assigned to him, it jumped into gear on about three occasions. Larry Armstrong, however, was never told by L.C. Martin that the tractor jumped into gear, again due to Mr. Martin's belief that there was no need to tell Mr. Armstrong since he never operated the tractor.
 
 
 6
 At one time during farm operations, L.C. Martin assigned the John Deere tractor in question to his brother, Dennis Martin. Dennis was the only other person that L.C. Martin told about the tractor's propensity to jump into gear. As did his brother, Dennis Martin experienced the tractor slipping into gear from neutral on at least one occasion. However, Dennis never informed Larry Armstrong regarding this defect, also being of the opinion that there was no need to tell him since the tractor was driven only by himself and his brother.
 
 
 7
 On the day of the accident, Dennis Martin used the John Deere tractor from about 7:30 a.m. until about 12:30 p.m. During that time period, he had no problems with the tractor. However, when he returned to the tractor after a lunch break, it would not start. Larry Armstrong, who was passing nearby in his pickup truck, saw the disabled tractor and stopped to render assistance. Mr. Armstrong pulled his truck with its front grill facing the front of the rear tire of the tractor in preparation to jump start the tractor. Mr. Armstrong connected the jumper cables to the battery in his truck while Dennis Martin connected the other end of the cables to the tractor's battery. Dennis Martin, at Mr. Armstrong's request, got into the cab of the tractor and made sure that the tractor was in the neutral position; Dennis placed the ignition key in the on position. He then got down from the tractor and stood with Mr. Armstrong between the tractor and the pickup truck. Mr. Armstrong then jump started the tractor while standing by its side. The tractor started, ran for a few seconds, and then jumped into gear. Dennis Martin managed to jump out of the way of the tractor, but Larry Armstrong was crushed between the tractor's rear wheel and the front of his pickup truck. Dennis Martin then jumped into the tractor and stopped it. Mr. Armstrong was rushed to the hospital by Dennis Martin and two passers-by while still conscious, however, he was pronounced dead a short time later.
 
 
 8
 At trial, over plaintiff's objection, the trial court instructed the jury that the negligence of Armstrong's employees, the Martin brothers, should be imputed to their employer, the decedent, and further required the jury to answer an interrogatory determining the combined amount of the decedent's and the farm hands' negligence. As noted previously, the jury attributed fifty percent of the fault for the accident to Armstrong and his farm hands and fifty percent to Farm Equipment. In accordance with the jury's findings in this regard, the trial court reduced the plaintiff's survival and wrongful death recoveries by fifty percent. This appeal followed.
 
 II. THE FARM HANDS' NEGLIGENCE
 
 9
 In its instructions to the jury, the trial court instructed the jurors that any negligence found to have been committed by Armstrong's employees, the Martin brothers, should be imputed to the decedent.[1] Plaintiff-Appellant maintains that the trial court's instruction is inconsistent with Louisiana law and that the decedent should not have been held responsible for his employees' negligence. We disagree.
 
 
 10
 Numerous cases in Louisiana jurisprudence hold that the negligence of an employee, while acting in the scope of his employment, is imputed to the employer. See, Geeck v. Jahncke Service, Inc., 249 So.2d 241, 243 (La.App. 4th Cir.1971); Leson Chevrolet v. Phoenix Insurance Co., 195 So.2d 444 (La.App. 4th Cir.1967); Grain Dealers Mutual Insurance Co. v. Texas and Pacific Railroad Co., 145 So.2d 342 (La.App. 4th Cir.1962); and Emmco Insurance Co. v. California Co., 101 So.2d 628 (Orl., La.App.1958).[2] In light of these decisions, we find no error in the trial court's instruction. Indeed, the trial court's instruction clearly states well settled principles of Louisiana jurisprudence and it is equally well settled that this Court will accord great weight to the district court's interpretation of state law when exercising diversity jurisdiction. Halpern v. Lexington Insurance Co., 715 F.2d 191, 192 (5th Cir.1983).
 
 
 11
 III. THE DECEDENT'S NEGLIGENCE AND THE WRONGFUL DEATH CLAIMS
 
 
 12
 The final and most perplexing issue presented requires this Court to determine whether the district court erred by reducing the wrongful death beneficiaries' recoveries by the amount of the decedent's negligence. While the jurisprudence of Louisiana is not entirely clear on this point, we are persuaded that the district court correctly interpreted Louisiana law and properly reduced the beneficiaries' recoveries in proportion to the decedent's negligence.
 
 
 13
 In 1928, the Louisiana courts first addressed the issue of whether a beneficiary's wrongful death recovery[3] would be barred under the then existing contributory negligence rule when the decedent's death was caused by the concurrent negligence of the decedent and a third party. See Vitale v. Checker Cab Co., 166 La. 527, 117 So. 579 (1929).[4] While contributory negligence acted as a complete bar to recovery in 1928, the Vitale decision clearly reflects the Louisiana Supreme Court's decision to inquire into the propriety of the decedent's conduct in determining whether the beneficiaries can recover wrongful death damages. Simply put, the supreme court held that the beneficiaries were barred from recovery if the concurrent negligence of the decedent and a third party joined to cause the decedent's demise.
 
 
 14
 The clarity of the rule announced in Vitale, however, has been obscured by subsequent developments in Louisiana law. In Callais v. Allstate Insurance Co., 334 So.2d 692 (La.1975), the Louisiana Supreme Court was required to determine whether a wrongful death beneficiary could recover wrongful death damages when the decedent was the sole cause of his death. Although the Louisiana court expressed concern over the continued use of the theory of imputed negligence set forth in Vitale, the court, nonetheless, denied the beneficiary's recovery due to the fact that the decedent's conduct was the sole cause of his death. The Louisiana court indicated a desire to abandon the imputed negligence theory, but, in applying what is termed the "duty/risk analysis" under Louisiana law, determined that the decedent (a father) owed no duty to the beneficiary (his surviving daughter) to protect the beneficiary from the decedent's death when the death was caused solely by the decedent's substandard conduct. Significantly, the Louisiana court distinguished the Vitale case and stated:
 
 
 15
 Because we are not faced with a situation in which a third party has partially caused the death of the deceased, and thereby is in effect a joint-tortfeasor with the deceased in injuring the survivor, we need not consider how liability should be apportioned in such a case.
 
 
 16
 Id. at 697.
 
 
 17
 Then, in 1979, the Louisiana courts were faced with a case in which the decedent, who had participated in a drag race, was found to have been negligent and to have assumed the risk of his injury. See, Olinde v. American Employers Insurance Co., 376 So.2d 1027 (La.App. 1st Cir.1979). Utilizing the duty/risk analysis prefaced in Callais, the Louisiana court held that the beneficiaries were barred from recovery. The court held:
 
 
 18
 Simply stated, the courts have adopted the policy that the beneficiaries of a decedent who aided or contributed to his own demise cannot recover for the wrongful death of the decedent. This is true whether we use the rubric of imputed contributory negligence, duty/risk, or even assumption of the risk.
 
 
 19
 Id. at 1029, quoting Death on the Callais Coach: The Mystery of the Louisiana Wrongful Death and Survival Actions, 37 La.L.Rev. 1 at 43-44 (1976).[5]
 
 
 20
 The foregoing cases demonstrate that the Louisiana courts have consistently held that the propriety of the decedent's conduct must be examined in determining the availability of a recovery in wrongful death. In sum, prior to the enactment of Louisiana's comparative negligence statute, no wrongful death recovery could be had when the decedent solely caused his death (Callais ), when the decedent assumed the risk of his demise (Olinde ), or when the decedent contributed to his demise (Vitale ). Therefore, we conclude that the district court properly required the jury to examine the decedent's conduct and to determine whether the decedent negligently contributed to his death. Finally, in light of Louisiana's adoption of comparative negligence, we hold that the district court was correct in reducing, rather than barring, the wrongful death recoveries by the percent of the decedent's negligence.[6]
 
 
 21
 For the foregoing reasons, the district court's decision is affirmed in all respects.
 
 
 22
 AFFIRMED.
 
 
 
 [1]
 The trial court gave the jury the following instructions:
 I instruct you that under Louisiana law, if an employee possesses knowledge and acts or fails to act in a reasonably prudent manner under the circumstances and does so within the course and the scope of his employment, duties and such actions or non-actions on the part of the employee, constitutes negligence. The negligence of the employee will be imputed to the employer. The employer will be found negligent in instances where his employee is found to be negligent. Therefore, if you find the decedent's employees Louis C. Martin and/or Dennis Ray Martin, possessed knowledge of the John Deere tractor's alleged defect, and either acted or failed to act in a reasonably prudent manner in failing to inform the decedent as their employer of this alleged defect, and that they should have done so under the circumstances and that, therefore, they were negligent, their negligence should be imputed to their employer, Larry Armstrong.
 In other words, should you find either or both of the Martin brothers negligent and that their negligence caused Mr. Armstrong's death, their negligence should be imputed to Larry Armstrong.
 Record, Vol. II at 520-21.
 
 
 [2]
 Plaintiff-appellant attempts to distinguish these cases by contending that the farm hands owed no duty to inform Farm Equipment of the improper repair and that, hence, the farm hands were not negligent. However, we find no support for such a distinction in Louisiana law and we find no sound policy reasons for grafting such an exception onto Louisiana jurisprudence. The record reveals that the farm hands were aware of the tractor's propensity to jump into gear but did not inform their employer of this risk, even when he was exposed to this risk while jump starting the tractor. There is a plethora of evidence supporting the jury's finding of negligence on the part of the decedent and his employees and we can conceive of no sound policy reasons for holding Farm Equipment liable for damages the jury concluded Farm Equipment did not cause
 
 
 [3]
 Louisiana's wrongful death statute provides:
 Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.
 Damages may include loss of consortium, service, and society, and shall be recoverable by the same respective categories of persons who would have had a cause of action for wrongful death of an injured person.
 The right to recover damages to property caused by an offense or quasi offense is a property right which, on the death of the obligee, is inherited by his legal, instituted, or irregular heirs, subject to the community rights of the surviving spouse.
 The right to recover all other damages caused by an offense or quasi offense, if the injured person dies, shall survive for a period of one year from the death of the deceased in favor of: (1) the surviving spouse and child or children of the deceased, or either such spouse or such child or children; (2) the surviving father and mother of the deceased, or either of them, if he left no spouse or child surviving; and (3) the surviving brothers and sisters of the deceased, or any of them, if he left no spouse, child or parent surviving. The survivors in whose favor this right of action survives may also recover the damages which they sustained through the wrongful death of the deceased. A right to recover the damages under the provisions of this paragraph is a property right which, on the death of the survivor in whose favor the right of action survived, is inherited by his legal, instituted, or irregular heirs, whether suit has been instituted thereon by the survivor or not.
 As used in this article, the words "child", "brother", "sister", "father", and "mother" include a child, brother, sister, father, and mother, by adoption, respectively.
 La.Civ.Code Ann. art. 2315 (West 1979 and Supp.1984).
 
 
 [4]
 Louisiana adopted comparative negligence in 1979. See, La.Civ.Code Ann. art. 2323 (West.Supp.1984) (effective August 1, 1980), which provides:
 When contributory negligence is applicable to a claim for damages, its effect shall be as follows: If a person suffers injury, death or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the claim for damages shall not thereby be defeated, but the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death or loss.
 Id.
 
 
 [5]
 For a more recent application of duty/risk principles, see Frain v. State Farm Insurance Co., 421 So.2d 1169 (La.App. 2nd Cir.1982)
 
 
 [6]
 Plaintiff-appellant relies on Lewis v. Till, 395 So.2d 737 (La.1981) for the proposition that the negligence of a decedent should not be imputed to the beneficiaries under Louisiana law. However, Lewis involved the issue of whether a beneficiary's negligence, which contributed to the decedent's demise, would be imputed to the other surviving beneficiary due to the fact that the two surviving beneficiaries were married. Clearly, Lewis dealt only with interspousal imputation of negligence among beneficiaries. Lewis did not address the issue of imputing a decedent's negligence to the beneficiaries. Indeed, the court in Lewis noted that the decedent "was too young to be capable of fault." Id. at 738